IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL STAR REGISTRY, OF ILLINOIS, LTD., | ) ) ) | |
| Plaintiff, | ) ) | No. 21 CV 6446 |
| v. | ) ) ) | Judge Jeffrey I. Cummings |
| RGIFTS LIMITED and MATEI SUPPLY CORP., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff International Star Registry of Illinois, Ltd. brings this action against defendants RGIFTS Limited and Matei Supply Corp. alleging trademark infringement and other related claims. Before the Court is plaintiff's motion for preliminary injunction against defendant RGIFTS, (Dckt. #127), defendant RGIFTS' response, (Dckt. #141), and plaintiff's reply, (Dckt. #147).[1] For the reasons set forth below, plaintiff's motion for preliminary injunction, (Dckt. #127), is denied.

**I.  BACKGROUND**

  **A.  The Parties**

Since 1979, plaintiff International Star Registry of Illinois ("ISR") has been continually engaged in the business of providing star naming services to the public. (Dckt. #1 ¶11). According to ISR, it has "identified a large number of unnamed stars and created a gift package including original and creative materials for presentation to an individual if a star is to be named after them." (*Id*.). In connection with its business, ISR owns a number of trademarks, including:

---

[1] Although ISR titles its motion as an "opposed ***ex parte*** motion for entry of a preliminary injunction order and other relief," RGIFTS has long since appeared in this matter and was afforded notice and the opportunity to be heard on the motion.

1

"INTERNATIONAL STAR REGISTRY," "STAR REGISTRY," and "STARREGISTRY.COM" (the "ISR Marks"). (*Id.* ¶14). ISR is also the owner of the internet domain names "STARREGISTRY.COM" and "STARNAMEREGISTRY.COM." (*Id.*).

Defendant RGIFTS Limited ("RGIFTS") is a company incorporated in the United Kingdom that also operates a star naming business on the internet. (*Id.* ¶3). Defendant Matei Supply Corp. is a California company that fulfills star registration orders for RGIFTS' customers located in the United States. (*Id.* ¶¶4, 9).

### B. The Parties' Claims

On December 2, 2021, ISR filed a five-count complaint against RGIFTS and Matei alleging that they infringed upon the ISR marks by using those marks, as well as "confusingly similar" marks and names, to advertise and sell their competing star naming services. (*Id.* ¶¶29-30). Specifically, ISR alleges that defendants promoted its own services using ISR's "INTERNATIONAL STAR REGISTRY" mark, and ISR attached exhibits to its complaint purporting to reflect that usage. (*Id.* ¶29). Those exhibits include November 2021 screenshots of: (1) defendants' responses to positive trustpilot.com reviews, which reference the "International Star Registry," (Dckt. #1-1 at 18); (2) a Google result for defendants' website with the title "International Star Registry" in response to a search for "international star registry," (*Id.* at 20); and (3) defendants' own website describing its various "International Star Registry" related services, (*Id.* at 22).

ISR further alleges that defendants use "confusingly similar" marks and names, such as INTERNATIONAL-STAR-REGISTRY, STAR REGISTRY, STAR-REGISTRY, INTERNATIONAL STAR REGISTER, STAR-REGISTER.ORG, STAR NAME REGISTRY, STAR-NAME-REGISTRY, and STAR-NAME-REGISTRY.COM," to deceive customers into

2

believing that their products are associated with ISR. (Dckt. #1 ¶30). Again, ISR attaches screenshots (one from May 2020 and the others from November 2021), purportedly reflecting such infringing conduct, including google search results for defendants' website based on searches for the "similarly confusing" terms, (Dckt. #1-1 at 23-28), defendants' responsive comment to a trustpilot.com review, (*Id.* at 30), and defendants' own website, (*Id.* at 32-34).

Based on these allegations, ISR asserts claims against defendants for: (1) federal trademark infringement; (2) federal unfair competition; (3) Illinois trademark infringement, consumer fraud, and deceptive trade practice; (4) common law unfair competition; and (5) dilution. Among other relief, ISR requested in its complaint that defendants be preliminarily and permanently enjoined from using or infringing ISR's marks, and similarly confusing marks, and also sought an order directing defendants to "turn over and assign to [ISR] all websites which have used or contain marks in violation of [ISR's] trademark rights." (Dckt. #1 at 23).

In response to ISR's claims, defendant RGIFTS has asserted various counterclaims. (Dckt. #98).[2] According to RGIFTS, ISR maintains an unlawful monopolization of the star naming industry and has attempted to "stymie and interfere with RGIFTS' growth." (Dckt. #98 ¶¶ 13, 26-52). RGIFTS seeks cancellation of ISR's trademarks (as generic), and asserts claims for tortious interference with business relationships, unfair competition, and monopolization and attempted monopolization under federal and state law.

RGIFTS further maintains that it has been using its mark "STAR NAME REGISTRY" to offer star naming services in the U.S. since 2015. (Dckt. #141 at 2). Furthermore, the record before the Court reveals that shortly after ISR filed this case in December 2021, RGIFTS filed an

---

[2] Also pending before the court is plaintiffs' fully briefed partial motion to dismiss RGIFTS' counterclaims. (Dckt. #111). The Court will issue a ruling on plaintiff's motion to dismiss by separate order in due course.

3

application with the United States Patent and Trademark Office ("USPTO") seeking to register "STAR NAME REGISTRY" in its name. (Dckt. #128-1). On November 16, 2022, the USPTO issued a nonfinal action denying the application for, among other reasons, the likelihood of confusion with ISR's marks. However, according to RGIFTS, an "online status update" on January 17, 2024 indicated that the mark would be "approved for publication." (Dckt. #141 at 2, #141-1, #141-2). The Court's search of the mark on the USPTO's website reveals that the application remains live with an opposition pending. *See* https://tsdr.uspto.gov/#caseNumber=97223035&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited July 9, 2024)

### C. ISR's Motion for Preliminary Injunction

Although ISR requested injunctive relief in the prayer for relief of its complaint, it is undisputed that it did not file a motion for temporary restraining order or a motion for preliminary injunction at the outset of this case. Instead, on February 13, 2024 – over two years after initiating this action – ISR filed its motion for preliminary injunction, (Dckt. #127). As explained in more detail below, ISR asserts that it filed the instant motion "because it recently discovered *new instances* of RGIFTS's willful infringement of ISR's registered and enforceable trademarks," (Dckt. #128 at 1 (emphasis in original)), along with "continuing infringement" of the same RGIFTS' advertisements described in the complaint, (*Id*. at 6).

## II. STANDARD FOR PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), "'never to be indulged in except in a case clearly demanding it.'" *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000), *quoting Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1184 (7th Cir. 1989). To decide whether a

preliminary injunction is warranted, courts in the Seventh Circuit engage in a two-step inquiry involving a threshold phase and a balancing phase. *See Vendavo, Inc. v. Long*, 397 F. Supp. 3d 1115, 1128 (N.D.Ill. 2019). First, the moving party (here, ISR) has the burden of making a threshold showing that: (1) it is likely to succeed on the merits; (2) traditional legal remedies would be inadequate; and (3) it will suffer irreparable harm absent a preliminary injunction. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). "If the moving party cannot establish [each] of these prerequisites, a court's inquiry is over and the injunction must be denied." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992).

If the moving party makes the threshold showing, the court moves to the balancing phase where the court "weighs the harm of denying an injunction to the [movant] against the harm to the [opposing party] of granting one." *Life Spine, Inc.*, 8 F.4th at 549 (citing *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). "The Seventh Circuit has described this balancing test as a sliding scale: if a plaintiff is more likely to win[,] the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win, the more that balance would need to weigh in its favor." *Mechling v. Operator of Website Muaythaifactory.com*, No. 21-CV-01538, 2021 WL 3910752, at *3 (N.D.Ill. Sept. 1, 2021) (internal quotation and citation omitted). In balancing the harms, the court also considers the public interest in granting or denying the injunction. *Life Spine, Inc.*, 8 F.4th at 539; *Ty*, 237 F.3d at 895. In doing so the "question is not whether the public interest will be served, but whether the public interest will be *dis*served" if the injunction is granted. *Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 866-68 (7th Cir. 1983) (emphasis in original).

From a procedural standpoint, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the

merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 (1981); *Mechling*, 2021 WL 3910752, at *1. Furthermore, courts can consider hearsay at the preliminary injunction stage and Federal Rule of Civil Procedure 65(a) does not require an evidentiary hearing. *Mechling*, 2021 WL 3910752, at *1 (citing *In re Aimster Copyright Litig.*, 334 F.3d 643, 653-54 (7th Cir. 2003)); *see also*, *Clean Juice Franchising, LLC v. Charleston Juicing, LLC*, No. 3:23-CV-00894-RJC-SCR, 2024 WL 2032947, at *2 (W.D.N.C. May 7, 2024) ("Federal Rule of Civil Procedure 65 does not require an evidentiary hearing and oral argument prior to issuance of a preliminary injunction.").

With this standard in mind, the Court turns to ISR's motion for preliminary injunction. The Court begins with consideration of whether ISR has shown that it will suffer irreparable harm if it is denied injunctive relief given ISR's more than two-year delay between the filing of its complaint and its filing of this motion.

### III. ANALYSIS

Again, ISR seeks a preliminary injunction based on what it describes as "new" and "escalating" infringement of the ISR marks through RGIFTS' online marketing efforts, along with what it calls "continuing infringement" that formed the basis of its initial complaint. (Dckt. #128 at 5-6; #147 at 2). Specifically, according to the declaration of ISR's Head of Sales and Communications, Elaine Stolpe, she discovered the following "new" and infringing advertisements on January 10, 2024: (1) a "knowledge panel" bearing the name of RGIFTS that describes its services as backed by the "International Star Registry;" (Dckt. #128-2 at 7); (2) a Bing search result for RGIFTS' website including the text "Www Starregistry Com," (*Id*. at 8); and (3) a Google sponsored link to RGIFTS' website including the text "National Star Registry," (*Id*. at 11). Ms. Stolpe also provides examples of the purported "continuing infringement of the

6

exact advertisements that were attached as exhibits to the Complaint." (*Id*. at 3; Dckt. #128 at 6 (comparing #128-2 at 9 with #1-1 at 20 and #128-2 at 11 with #1-1 at 26, 28)). Based on these alleged new instances of infringement, and the alleged continuing infringement, ISR asks the Court in its motion to enter a preliminary injunction barring RGIFTS from "further using in commerce any reproduction, counterfeit, copy, or colorable imitation of the ISR Marks in connection with the sale, offering for sale, distribution, or advertising of the star naming goods which such use is likely to cause confusion, or to cause mistake, or to deceive." (Dckt. #128 at 15).

In response, RGIFTS argues, among other things, that ISR's attempt to seek injunctive relief over two years after filing this action – and over *eight* years after first learning of RGIFTS' use of the "Star Name Registry" in the United States, (*see* Dckt. #142 at 25), – precludes a finding of irreparable harm to warrant injunctive relief. The Court agrees.

      **A.**    **ISR's Two-Year Delay in Filing its Motion for Preliminary Injunction Precludes a Finding of Irreparable Harm as to both RGIFTS' "continuing" and "new instances" of purported trademark infringement.**

In a trademark infringement case such as this one, the Seventh Circuit traditionally has applied a presumption of irreparable harm. *Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949, 952 (N.D.Ill. 2018) (acknowledging the "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss.") (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d at 16); *see also* 15 U.S.C. §1116(a) (codifying the presumption pursuant to a December 2020 amendment to the Lanham Act). Nevertheless, that presumption "can be rebutted by, among other things, a showing that the plaintiff unreasonably delayed in seeking preliminary injunctive relief." *Redbox*, 310 F.Supp.3d at 952. This is so because a "lengthy, unexplained delay in seeking relief calls into question

'how urgent the need for [preliminary] equitable relief really is.'" *Id*. at 953, *quoting Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011); *see also Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) ("[D]elay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered").

To be sure, "the length of the delay, on its own, is not dispositive," *Life After Hate, Inc. v. Free Radicals Project, Inc.*, 410 F.Supp.3d 891, 910 (N.D.Ill. 2019). A delay may be excused if it was caused by acceptable reasons such as intervening settlement talks, *see Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 169 (3d Cir. 2000), or "good faith efforts to investigate the alleged infringement," *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995). Similarly, "whether the defendant has been lulled into a false sense of security or had acted in reliance on the plaintiff's delay influences whether [courts] will find that a plaintiff's decision to delay in moving for a preliminary injunction is acceptable or not." *Ty, Inc.*, 237 F. 3d at 903.

    1.    **RGIFTS' "Continuing Infringement"**

With respect to RGIFTS' "continuing infringement" of the ISR marks in the same manner as alleged in the complaint, ISR's two-year delay[3] in seeking injunctive relief after filing

---

[3] "When a defendant asserts that the plaintiff has unduly delayed in pursuing a preliminary relief, the court generally measures the pertinent span from the time the plaintiff discovers the trademark infringement (or false advertising) until the injunctive relief motion is filed." *In re C2R Glob. Mfg., Inc.*, No. 18-30182-BEH, 2020 WL 5941330, at *19 (Bankr.E.D.Wis. Oct. 6, 2020). For purposes of this motion, the Court presumes that, at a minimum, ISR was aware of RGIFTS' purported infringement of the ISR marks in November 2021, the date of the majority of the screenshots that were attached to the initial complaint ISR filed on December 2, 2021. The Court is cognizant of RGIFTS's point that ISR – according to its own interrogatory answers – was aware of RGIFTS' use of "Star Name Registry" mark (which it asserts is "confusingly similar") as early as 2015. (Dckt. #142 at 25). Naturally, any finding that a two-year delay rebuts the presumption of irreparable harm would support a finding that an eight-year delay does the same.

this action plainly rebuts any presumption of irreparable harm. Indeed, courts in the Seventh Circuit and elsewhere have found far shorter delays sufficient to preclude a finding of irreparable harm. *See, e.g., LandAirSea Sys., Inc. v. Synchronize Income Dev., LLC,* No. 23 CV 4964, 2024 WL 1657355, at *6 (N.D.Ill. Feb. 8, 2024), *report and recommendation adopted,* 23 CV 4964, Dckt. #129, (finding 10-month delay weighed against a finding of irreparable harm); *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc) (same for a five-month delay); *Capital Mach. Co. v. Miller Veneers, Inc.*, No. 1:09-cv-702-JMS-TAB, 2010 WL 3000769, at *1 (S.D.Ind. July 28, 2010) (holding that waiting over a year into the litigation before requesting a preliminary injunction conflicts with a finding of irreparable harm); *see also Redbox*, 310 F.Supp.3d. at 953 (opining that the "longest such delay ever permitted by the Seventh Circuit appears to be nine months."). Moreover, there can be no question that RGIFTS was lulled into a false sense of security as a result of ISR's delay in seeking an injunction because, at a minimum, it continues to operate its business and website using at least the purported "confusingly similar" mark of "Star Name Registry," as it did at the outset of this case, if not long before. *See LandAirSea Sys., Inc.*, 2024 WL 1657355, at *6 ([Defendant's] reliance is obvious given that www.synchronizeauto.com still displays the rebranding message and Synchronize logo.").

Where, as here, ISR has offered no other explanation for its two-year delay with respect to RGIFTS' continued infringement of its marks (such as intervening settlement talks or further investigation), ISR "waited longer than prudence can bear to seek injunctive relief." *In re C2R Glob. Mfg.*, 2020 WL 5941330, at *20; *TWD, LLC v. Grunt Style LLC*, No. 18 C 7695, 2023 WL 7095011, at *4 (N.D.Ill. Mar. 23, 2023) ("Standing alone, [plaintiff's] unexplained [four-year] delay in seeking injunctive relief on its trademark claim precludes a finding of irreparable harm.").

2.      **"New Instances" of RGIFTS' Infringement**

Although ISR is correct that "new" instances of "escalating" infringement could possibly excuse its lengthy delay in seeking an injunction, *see Vans, Inc. v. Walmart, Inc.,* No. 821CV01876DOCKES, 2022 WL 1601530, at *13 (C.D.Cal. Mar. 31, 2022), ISR has not provided evidence of any such new and escalating infringement here. ISR cites to what it asserts are new instances of alleged trademark infringement that it discovered in January 2024, just a few weeks before ISR filed its motion. However, ISR misses the mark because these "new instances" of infringement were generated by search engines that were not within RGIFTS' control. Specifically, ISR characterizes the following as "new instances" of infringement: (1) a "knowledge panel" bearing the name of RGIFTS that describes its services as backed by the "International Star Registry;" (Dckt. #128-2 at 7); (2) a Bing search result for RGIFTS including the text "Www Starregistry Com," based on a search for "Star Registry com," (*Id*. at 8); and (3) a Google sponsored search result for RGIFTS including the text "National Star Registry," based on a search for "national star Registry," (*Id*. at 11).

First, with respect to the knowledge panel, (Dckt. #128-2 at 7), as both RGIFTS *and* Google explain:

> Knowledge panels are information boxes that appear on Google when you search for entities (people, places, organizations, things) that are in the Knowledge Graph. They are meant to help you get a quick snapshot of information on a topic based on Google's understanding of available content on the web.
>
> Knowledge panels are automatically generated, and information that appears in a knowledge panel comes from various sources across the web. . .
>
> We also know that entities whose information is included in knowledge panels (like prominent individuals or the creators of a television show) are self-authoritative, and we provide ways for these entities to provide direct feedback. Therefore, some of the information displayed may also come from verified entities who have suggested edits to facts on their own knowledge panels.

. . .

>Knowledge panels are updated automatically as information changes on the web, but Google also considers changes in two main ways: directly from the entities depicted in the knowledge panel, and from general user feedback.

>If you are the subject of or official representative of an entity depicted in a knowledge panel, you can claim this panel and suggest changes.

https://support.google.com/knowledgepanel/answer/9163198?hl=en (last visited July 9, 2010). The January 10, 2024 screenshot of the knowledge panel here reflects that it had not yet been claimed, and, according to the declaration of RGIFTS' Director Rhys King, the "panel was entirely assembled by Google without any involvement by RGIFTS." (Dckt. #141-4).

Similarly, Mr. King explains that many of RGIFTS' advertisements, such as the allegedly newly infringing Bing and Google ads submitted by ISR, (Dckt. #128-2 at 8, 11), rely on keyword insertion, also known as keyword substitution or keyword replacement. (Dckt. #141-4 at 3). Keyword insertion "allows the search engine to substitute certain placeholders in an advertisement for terms including the actual term that a user searched on or variations thereof." (*Id*.).

Technical jargon aside, Mr. King's declaration – unrebutted by ISR with evidence to the contrary – demonstrates that these "new instances" of infringement were generated by the search engines (whether through Google's knowledge panel program or keyword substitution) in response to the specific search terms used. It follows then that these three advertisements are not new and escalating conduct *at the hands of RGIFTS* that could potentially excuse ISR's two-year delay in seeking an injunction.[4] Moreover, even if the Court assumes – as ISR does - that the knowledge panel was generated by pulling RGIFTS' infringing conduct from RGIFTS' *own*

---

[4] In this regard, this case is distinguishable from *Vans, Inc. v. Walmart, Inc.,* No. 821CV01876DOCKES, 2022 WL 1601530, at *13 (C.D.Cal. Mar. 31, 2022), relied on by ISR. There, the Court found no unreasonable delay where plaintiff initially only knew defendant was selling one infringing shoe model and subsequently discovered defendant was selling an additional 29 infringing shoe models.

11

website or elsewhere in the marketplace, the only way to stop such conduct is to enjoin RGIFTS from using the ISR marks and similarly confusing marks. This is the exact same relief ISR sought when it filed its complaint but – for reasons unknown – ISR did not file a motion for injunctive relief until over two years later. As explained above, *supra* at Section III(A)(1), such a request comes too little too late to support a finding of irreparable harm.

Because ISR has not demonstrated irreparable harm as a result of any alleged continuing or new infringement by RGIFTS, the Court need not address any of the additional threshold factors, and ISR's motion for preliminary injunction is denied. *See GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019); ("If the plaintiff fails to meet any of the[] threshold requirements, the court must deny the injunction.") (quotation omitted); *Smith v. Helzer*, 614 F. Supp. 3d 668, 691 (D.Alaska 2022), *aff'd*, 95 F.4th 1207 (9th Cir. 2024) ("Because the failure to meet any . . . factor warrants denial of a motion for preliminary injunctive relief, the Court does not address the remaining . . . factors.").

## CONCLUSION

For the foregoing reasons, plaintiff's motion for preliminary injunction, (Dckt. #127), is denied.

**DATE: July 12, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**