IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL STAR REGISTRY, ) OF ILLINOIS, LTD., ) ) **Plaintiff,** ) ) v. ) ) RGIFTS LIMITED and MATEI ) SUPPLY CORP., ) ) **Defendants.** ) | | No. 21 CV 6446 Judge Jeffrey I. Cummings |

**MEMORANDUM OPINION AND ORDER**

Plaintiff International Star Registry of Illinois, Ltd. ("ISR") brings this action against defendants RGIFTS Limited ("RGIFTS") and Matei Supply Corp. alleging trademark infringement and other related claims. In response, RGIFTS asserts counterclaims against ISR, (Dckt. #98), seeking cancellation of ISR's trademarks (Counts 1-5), and asserting claims for tortious interference with business relations, unfair competition, and monopolization and attempted monopolization under federal and state law (Counts 6-11). Before the Court is ISR's partial motion to dismiss Counts 6-11 of RGIFTS' counterclaims pursuant to Rule 12(b)(6), (Dckt. #111, #112), defendant RGIFTS' response (Dckt. #118), and ISR's reply, (Dckt. #122). For the reasons set forth below, ISR's motion to dismiss, (Dckt #111), is granted in part and denied in part.

**I.    LEGAL STANDARD**

The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A party may move to dismiss a complaint pursuant to Rule 12(b)(6) it if fails "to state a claim upon which relief may

be granted," and such a motion tests the legal sufficiency of the complaint and not the merits of the case. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 887 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023) (cleaned up). "A claim has facial plausibility when [the plaintiff] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (cleaned up). Plausibility is not satisfied by mere "labels and conclusions," "formulaic recitation of the elements of a cause of action," or facts "merely consistent" with a defendant's liability. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555 (2007). Moreover, for complaints involving complex litigation, like RGIFTS' antitrust claims here, "a fuller set of factual allegations may be necessary to show that plaintiff's claims are plausible." *Int'l Equip. Trading, Ltd. v. AB SCIEX LLC*, No. 13 C 1129, 2013 WL 4599903, at *2 (N.D.Ill. Aug. 29, 2013).

Finally, the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in the [non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). However, the Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Id*.

## II.     RELEVANT BACKGROUND

### A.     The Parties

RGIFTS is a company headquartered in the United Kingdom that operates a star registry through which a person can purchase the right to name a star in RGIFTS' star registry. (Dckt. #98 ¶¶1-2). RGIFTS entered the star naming marketplace in 2014, after which it rapidly grew to

become an industry leader. (*Id*. ¶¶11-12). Defendant Matei Supply Corp. is a California company that fulfills star registration orders for RGIFTS' customers located in the United States. (Dckt. #1 ¶¶4, 9).

ISR is an Illinois Corporation that has been engaged in the business of providing star naming services to the public since 1979. (Dckt. #1 ¶¶ 1, 11). In connection with its business, ISR owns a number of trademarks, including: "INTERNATIONAL STAR REGISTRY," "STAR REGISTRY," and "STARREGISTRY.COM" (the "ISR Marks"). (*Id.* ¶14).

### B. ISR's Claims Against RGIFTS

On December 2, 2021, ISR filed a five-count complaint against RGIFTS and Matei alleging that they infringed upon the ISR marks by using those marks, as well as "confusingly similar" marks and names, to advertise and sell their competing star naming services. (Dckt. #1 ¶¶29- 30). Specifically, ISR alleged that defendants promoted its own services using ISR's marks and used "confusingly similar" marks and names to deceive customers into believing that their products were associated with ISR. (*Id*. ¶¶29-30). Based on these allegations, ISR asserts claims against defendants for: (1) federal trademark infringement; (2) federal unfair competition; (3) Illinois trademark infringement, consumer fraud, and deceptive trade practice; (4) common law unfair competition; and (5) dilution.

### C. RGIFTS' Counterclaims

In response to ISR's complaint, RGIFTS asserted its own counterclaims. (Dckt. #98). According to RGIFTS, almost since its founding, ISR has attempted to "stymie and interfere with RGIFTS' growth." (*Id*. ¶13). Specifically, RGIFTS alleges that in 2016, ISR attempted to "have a major internet advertising provider ("Company X") stop doing business with RGIFTS." (*Id*. ¶14). RGIFTS maintains that although ISR was "unsuccessful in preventing RGIFTS from

doing business with Company X," ISR later reached a written settlement agreement with Company X. (*Id.* ¶15). Pursuant to that agreement, (Dckt. #100), Company X agreed not to use or allow third-parties to use certain of the ISR marks on its platform. RGIFTS further alleges that in 2019, ISR attempted to have RGIFTS' presence removed from a major social media platform. (Dckt. #98 ¶16). According to RGIFTS, this "attempt was largely unsuccessful, as the major social media platform recognized ISR's attempt for the anti-competitive interference that it was." (*Id*. ¶17).

Moreover, RGIFTS alleges that ISR has sent numerous cease-and-desist letters to various competitors in the star registry/star naming market and third-party search, advertising, and social media companies asserting infringement of the ISR marks (which RGIFTS seeks to cancel as generic in Counts I-V of its counterclaims). (*Id.* ¶19; Dckt. #98-2). According to RGIFTS, this "anticompetitive strategy" has often worked because, on "information and belief," many of the smaller competitors in the marketplace could not afford a legal battle with ISR and instead withdrew from the market. (Dckt. #98 ¶20). In RGIFTS' view, this type of "mounting serial, aggressive, meritless legal threats against competitors in the star registry/star naming market has become ISR's *modus operandi*." (*Id*. ¶13).

In further support of its monopolization claims, RGIFTS includes allegations regarding the relevant star registry/star naming market and ISR's alleged monopolization, or attempted monopolization, thereof. Specifically, RGIFTS contends that there exists in the market three relevant product submarkets:

    (a)    The market for search engine users that seek star registry/star naming services, which ISR has attempted to monopolize with its sham trademark cease-and-desist- letters and litigation ("the search engine market");

4

    (b)    The market for social media site users that seek star registry/star naming services, which ISR has attempted to monopolize with its sham trademark cease-and-desist letters and litigation ("the social media market"); and

    (c)    The market for star registry/star naming services on online e-commerce discount platforms for which consumers can purchase vouchers for instant redemption and in which RGIFTS has been excluded from competition by ISR's illegal contract with Company X ("the discount market").

(*Id*. ¶27).

Based on these allegations, among others, RGIFTS brings claims against ISR for cancellation of its trademarks as generic (Counts 1-5) (claims which are not at issue here); tortious interference with business relationships (Count 6); common law unfair competition (Count 7); monopolization (Count 8) and attempted monopolization (Count 9) in violation of Section 2 the Sherman Act, 15 U.S.C. §2, and monopolization (Count 10) and attempted monopolization (Count 10) in violation of the Illinois Antitrust Act, 740 ILCS 10/3 *et seq*. The Court addresses each claim ISR seeks to dismiss in turn below, beginning – as did ISR – with the antitrust claims.

### III. ANALYSIS

#### A. Antitrust Claims (Counts 8-11)

##### 1. Elements of a claim for monopolization and attempted monopolization under federal and state law.

Section 2 of the Sherman Act provides, in relevant part, that "[e]very person who shall monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony. . ." 15 U.S.C. §2. In order to state a claim for monopolization under Section 2, RGIFTS must plead that ISR had: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power." *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F.Supp.2d 880, 901 (N.D.Ill. 2011), *quoting United States v. Grinnell Corp.*, 384 U.S. 563, 570-

71 (1966). To state a claim of attempted monopolization, RGIFTS must plead that ISR had: "(1) specific intent to achieve monopoly power, (2) predatory or anticompetitive conduct directed at accomplishing this unlawful purpose, and ... (3) a dangerous probability that the attempt to monopolize will be successful." *Id.*, quoting *Ind. Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1413 (7th Cir. 1989).

With respect to Section 3 of the Illinois Antitrust Act, it is modeled after the Sherman Act and, therefore, "the applicable legal standards are the same." *Hannah's Boutique, Inc. v. Surdej*, 112 F.Supp.3d 758, 765 n.7 (N.D.Ill. 2015) (citing 740 ILCS 10/11 ("When the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this Act.")); *see also Int'l Equip. Trading*, 2013 WL 4599903, at *3 n.1 (noting that "the Illinois Antitrust Act claim will stand or fall with the Sherman Act claim").

In its partial motion to dismiss, ISR asks the Court to dismiss RGIFTs' antitrust claims, arguing that: (1) RGIFTS has failed to allege the requisite antirust injury to support any of those claims; (2) RGIFTS failed to otherwise plead the elements of its claims for monopolization or attempted monopolization under federal or state law; and (3) that ISR's conduct with respect to its registered trademarks is protected under the *Noerr-Pennington* doctrine. The Court agrees as to the first point and thus need not address the remaining arguments.

### 2. RGIFTS fails to allege an antitrust injury to support its claims for monopolization and attempted monopolization.

"For all antitrust claims, [RGIFTS] must allege that [it has] suffered an antitrust injury, namely injury resulting from acts that either reduce output or raise prices to consumers." *Medrad, Inc. v. Sprite Dev.*, LLC, No. 08 CV 5088, 2011 WL 3900730, at *3 (N.D.Ill. Sept. 6, 2011) (citing *Wagner v. Magellan Health Servs., Inc.,* 121 F.Supp.2d 673, 681 (N.D.Ill. 2000));

*City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F.Supp.3d 730, 757 (N.D.Ill. 2019) (noting that a plaintiff bringing a claim under Section 2 of the Sherman Act "must also allege an antitrust injury."). This is so because – as the Supreme Court has explained – "[t]he purpose of the [Sherman] Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993). Indeed, the Act "directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself. It does so not out of solicitude for private concerns but out of concern for the public interest." *Id.*; *see also Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 488 (1977) ("The antitrust laws . . . were enacted for 'the protection of competition not competitors.'"), *quoting Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962).

Here, RGIFTS has failed to sufficiently plead an antitrust injury, that is, an injury resulting from ISR's conduct that either reduces output or raise prices to *consumers*. Instead – as ISR notes – RGIFTS' counterclaims are rife with allegations regarding injury to *itself*. (*See, e.g.,* Dckt. #98 ¶¶48-51 (alleging that ISR's anticompetitive conduct has: caused "significant and ongoing injury *to RGIFTS*;" "hampered competition from *RGIFTS*;" "reduced *RGIFTS'* ability to invest in its core business and to explain as quickly as it otherwise could," and, through ISR's prior settlement agreement with Company X, "effectively cut *RGIFTS* out of the discount market") (emphasis added)). RGIFTS also alleges generally that ISR's anticompetitive conduct has harmed *other* competitors by, upon information and belief, forcing smaller competitors to withdraw from the market; "discourag[ing] entry into the Relevant Markets;" "chill[ing] investment necessary to expand even for smaller participants;" and – through its settlement with Company X – blocking "any company other than ISR from competing in the discount market" or

7

from purchasing advertisements on Company X's platform. (*See, e.g.,* Dckt. #98 ¶¶20, 46-47, 138-142). However, injury to *RGIFTS* and a small group of competitors such as alleged here is not the type of injury the Sherman Act seeks to protect. *Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, No. 14-CV-02705, 2017 WL 6821094, at *6 (N.D.Ill. Dec. 13, 2017) ("There is no antitrust injury when the harm alleged is harm to the business of one competitor (or a group of competitors)—the injury must be to the market.").

More importantly, wholly absent from RGIFTS' counterclaims are well pleaded allegations showing the requisite antitrust injury to the public and consumers in the way of decreased output or increased prices. As ISR correctly notes, the only possible allegation regarding such an injury comes in Count 8 for monopolization, in which RGIFTS states that ISR's conduct "causes injury to competition as a whole in the Relevant Markets because it allows and will allow ISR to further entrench its monopoly position in each of the Relevant Markets." (Dckt. #98 ¶142). But a plausible claim is not supported here by RGIFTS' mere "formulaic recitation of the elements" of its cause of action. *Twombly*, 550 U.S. 544, 555. And, absent well-supported allegations of the requisite antitrust injury to consumers, RGIFTS has failed to sufficiently plead its claims for monopolization and attempted monopolization under either federal or state law. *Medrad*, 2011 WL 3900730, at *3 ("Without any allegation as to how market-wide competition will be affected [through the reduction of production of the product or an increase in prices], the complaint fails to allege a claim on which relief may be granted.") (citation omitted).

Furthermore, although RGIFTS' "antitrust claims may be dismissed for failure to plead antitrust injury alone," *Niemann v. Carlsen*, No. 4:22-CV-01110-AGF, 2023 WL 4198227, at *11 (E.D.Mo. June 27, 2023), RGIFTS' claims for monopolization under federal and state law

suffer from the additional defect that it has failed to plead ISR's "possession of monopoly power in the relevant market." *In re Dairy Farmers*, 767 F.Supp.2d at 901. "Monopoly power is the power to control prices or exclude competition." *Braman v. The CME Grp., Inc.*, 149 F.Supp.3d 874, 896 (N.D.Ill. 2015). "There are two accepted methods for proving that a defendant possessed monopoly power: (1) 'through direct evidence of anticompetitive effects;' or (2) 'by proving relevant product and geographic markets and by showing that the defendant's share exceeds whatever threshold is important for the practice in that case.' " *Id.*, quoting *In re Dairy Farmers*, 767 F.Supp.2d at 902. Here, although RGIFTS attempts to define the relevant submarkets at issue, it has failed to allege any facts that allow the Court to determine ISR's market share therein. And again, nor has RGIFTS "alleged any facts to support [its] conclusory allegation of anticompetitive effects caused" by ISR's conduct. *Braman*, 149 F.Supp.3d at 896.

For these reasons, the Court dismisses Counts 8-11 of RGIFTS' counterclaims without prejudice and with leave to re-plead solely to the extent that it can do so consistent with this Opinion and counsel's obligations under Rule 11. *See* Fed.R.Civ.P. 15(a)(2) ("The court should freely give leave [to replead] when justice so requires."); *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible.").[1]

    **B.    Remaining State Law Claims (Counts 6 and 7)**

In the remaining two claims at issue, RGIFTS alleges that ISR tortiously interfered with its business relations by interfering with its customers, suppliers, vendors, and partners (Count

---

[1] Having found that RGIFTS failed to properly plead its antitrust claims under Rule 12(b)(6), the Court makes no substantive finding as to whether ISR's conduct is protected under the *Noerr-Pennington* doctrine.

6), and engaged in common law unfair competition, (Count 7). ISR seeks to dismiss both claims pursuant to Rule 12(b)(6), arguing that RGIFTS fails to properly plead a claim for either count. The Court agrees in part.

> **1. RGIFTS has stated a claim for tortious interference with business relations with respect to its allegations regarding ISR's alleged interference with its customers.**

As RGIFTS acknowledges, in order to state a claim for tortious interference with business relations under Illinois law, RGIFTS must allege: "(1) it had a reasonable expectancy of entering into a valid business relationship, (2) the defendant had knowledge of that expectancy, (3) the defendant intentionally and unjustifiably interfered with the relationship by inducing or causing a termination of the expectancy, and (4) the defendant's interference caused damages." *Pactiv, LLC v. Multisorb Techs., Inc.*, 63 F.Supp.3d 832, 841 (N.D.Ill. 2014); *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009).

Here, RGIFTS alleges that ISR tortiously interfered with its business relationships with its customers, suppliers, vendors, and partners by: (1) telling RGIFTS' customers that RGIFTS was (a) buying advertising from Google and abusing ISR's registered trademarks, (b) a counterfeit company, and (c) one of several imposter companies; (2) attempting to interfere with RGIFTS' relationship with social media sites; and (3) entering into the anticompetitive written settlement agreement with Company X. (Dckt. #98 at 24). For the following reasons, the Court finds that only the first of these allegations supports a claim for tortious interference, while the latter two fall short.

First, with respect to ISR's purported interference with RGIFTS' own customers – though perhaps inartfully pled – RGIFTS has, at a minimum, stated a claim for tortious interference. To begin, although RGIFTS has not specifically named the customers to which ISR

purportedly made its disparaging remarks, "[t]o survive a motion to dismiss . . . a plaintiff claiming tortious interference . . . is not required to identify specifically the third parties with which the defendants interfered." *Energy Servs. Air Conditioning & Heating Co., Inc.*, No. 97 C 373, 1997 WL 790725, at *11 (N.D.Ill. Dec. 22, 1997) (citing *Mitsubishi Electric Corp. v. IMS Technology, Inc.*, No. 96 C 499, 1997 WL 630187 (N.D.Ill. Sept.30, 1997)).

Moreover, accepting RGIFTS' allegations within the entirety of its counterclaims as true, the Court can reasonably infer that: (1) RGIFTS had a "a reasonable expectancy to enter into future business relations," with its own customers, *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F.Supp.2d 704, 712 (N.D.Ill. 2006); (2) that ISR – a direct competitor – had knowledge of that expectancy as evidenced by its alleged interactions with RGIFTS' third-party vendors and customers; (3) that ISR's false comments that RGIFTS was a counterfeit and imposter company interfered with RGIFTS' expectancy with its customers; and (4) thereby caused damage to its business and reputation, by, among other things, "casting a shadow of illegitimacy over RGIFTS in the marketplace," (Dckt. #98 ¶50).

These allegations suffice to state a claim for tortious interference with prospective economic advantage. *See, e.g., Medscript Pharmacy, LLC v. My Script, LLC*, 77 F.Supp.3d 788, 796 (N.D.Ill. 2015) ("Previous courts have found that a plaintiff's claim for tortious interference survives when his complaint alleges that defendants made false statements that caused plaintiff to lose potential customers.") (citing cases); *Manley v. Boat/U.S. Inc.*, No. 13-CV-5551, 2014 WL 1647117, at *4-5 (N.D.Ill. Apr. 23, 2014) (plaintiff's allegations that defendants made false statements regarding the nature of its business allowed the court to infer that defendants interfered with business plaintiff might have received but for defendants' conduct and stated a claim for tortious interference with prospective advantage); *Energy Servs.*, 1997 WL 790725, at

\*13 (finding a plaintiff had "sufficiently pleaded damages by alleging damage to reputation and goodwill" because of the defendant's conduct).

As such, the Court denies ISR's motion to dismiss the tortious interference claim based on ISR's alleged interference with RGIFTS' customers.

However, with respect to ISR's purported attempt to interfere with RGIFTS' relationship with social media sites – namely, ISR's attempt to have RGIFTS' presence removed from a major social media platform – RGIFTS has failed to sufficiently plead that such conduct terminated any relationship with that company. Indeed, RGIFTS itself alleged that this "attempt was largely unsuccessful, as the major social media platform recognized ISR's attempt for the anti-competitive interference that it was." (Dckt. #98 ¶17). Simply put, RGIFTS fails to allege that ISR 's actions induced or caused the termination of the relationship between RGIFTS and any major social media platform.

Similarly, with respect to ISR's written settlement agreement with Company X – under which Company X agreed not to allow third parties to use certain of the ISR marks on its platform – RGIFTS again falls short of alleging that ISR's conduct caused or induced the termination of its business expectancy with Company X. As ISR notes, RGIFTS fails to plausibly "allege that it has actually been cut out of Company X's platform or the . . . Discount Market [and] instead, it hedges, alleging only that it has been 'effectively' or 'essentially' cut out of the market." (Dckt. #122 at 14; Dckt. #118 at 8-9). Indeed, while the agreement between ISR and Company X bars the use of certain terms on Company X's platform, including marks at issue in this litigation, it does not fully bar RGIFTS from using its platform. To the contrary, "[a]s the settlement agreement with Company X states, RGIFTS is free to operate on the Company X platform and in the Discount Market" so long as it did not use infringing terms.

(Dckt. #122 at 14).  Finally, RGIFTS' counterclaim does not identify any other platforms in the discount market that it has been "completely excluded" as a result of ISR's conduct to support its claim.  (Dckt. #98 ¶45).

Because RGIFTS has failed to allege that ISR's purported interference with the social media company or Company X induced or caused a termination of its business expectancy with those entities, RGIFTS claims for tortious interference based on those allegations are dismissed without prejudice with leave to re-plead as appropriate.  *TCC Historic Tax Credit Fund VII, L.P. v. Levenfeld Pearlstein, LLC*, No. 11 C 8556, 2012 WL 5949211, at *6 (N.D.Ill. Nov. 27, 2012) (dismissing claim for tortious interference where, among other things, plaintiff failed to allege that defendants' conduct "caused a breach or termination of the expectancy.").

### 2. RGIFTS fails to state a claim for common law unfair competition.

In Illinois, "the common law tort of unfair competition encompasses a 'broad spectrum of law, making it difficult to determine exactly what elements are required in order to prove such a claim." *Philips N. Am. LLC v. Glob. Med. Imaging, LLC*, No. 21-CV-3615, 2022 WL 3106971, at *11 (N.D.Ill. Aug. 4, 2022) (internal citations and quotations omitted).  As a result – and as both parties acknowledge – courts have recognized that the elements of common law unfair competition are "elusive" and "escape definition."  *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F.Supp.3d 1005, 1012 (N.D.Ill. 2014); *see also LG Electronics v. Whirlpool Corp.*, No. 08 C 242, 2010 WL 3521785, at *2 (N.D.Ill. Sept. 1, 2010) ("Stating a claim for unfair competition under Illinois common law is not a simple task").  Nonetheless, the theory of common law unfair competition has evolved to at least include: (1) unfair competition by interfering with third party relations; *see Zenith Elecs. Corp. v. Exzec, Inc.*, No. 93 C 5041, 1997 WL 798907, at *14 (N.D.Ill. Dec. 24, 1997); and (2) unfair competition based on conduct that "shocks judicial

13

sensibilities" and "violates standards of commercial morality," *Fedders Corp. v. Elite Classics*, 268 F.Supp.2d 1051, 1063 (S.D.Ill. 2003), *quoting Wilson v. Electro Marine Sys., Inc.,* 915 F.2d 1110, 1118 (7th Cir. 1990). Here, RGIFTS' allegations fall short of satisfying the pleading requirements of Rule 12(b)(6) under either theory of recovery.

First, to the extent that the allegations of RGIFTS' claim for unfair competition mirror – at least in part – its claim for tortious interference with business relations, that claim fails for many of the same reasons as described above. *See A-1 Packaging Sols., Inc. v. RFID Resol. Team, Inc.*, No. 17-CV-2205, 2019 WL 958359, at *4 (C.D.Ill. Feb. 27, 2019) ("When the allegations are insufficient to state a cause of action for tortious interference or deceptive trade practice, courts often find that the same allegations are also insufficient to support an unfair competition claim."); *The Film & Tape Works, Inc. v. JuneTwenty Films, Inc.*, 856 N.E.2d 612, 622 (Ill.App.Ct. 2006) (where summary judgment was granted on the tortious inference claim, the court disposed of the unfair competition claim without further analysis).[2]

More importantly, however, RGIFTS' claim that ISR's conduct "shocks judicial sensibilities" and "violates standards of commercial morality" falls far short. According to RGIFTS – beyond the same alleged conduct it relied on to support its claim for tortious interference – such shocking conduct includes ISR "asserting sham claims in this litigation," "asserting sham claims in cease-and-desist letters to RGIFTS," and "attempting to use generic trademarks to unfairly compete with RGIFTS." (Dckt. #98 ¶133). In the Court's view, ISR's conduct in attempting to protect its registered trademarks, and assertion of those rights in the

---

[2] There is also the additional basis for dismissal – unaddressed by RGIFTS – that any claim for unfair competition based on ISR's communications with a social media site in May 2019 are subject to the three-year statute of limitations for the tort of unfair competition. *Dyson, Inc. v. Bissell Homecare, Inc.*, 951 F.Supp.2d 1009, 1037 (N.D.Ill. 2013) (recognizing the three-year statute of limitations for unfair competition).

marketplace and this litigation, is simply "not the stuff of unfair competition." *Int'l Quality & Productivity Ctr./Penton Learning Sys., LLC v. Eck*, No. 98 C 3146, 1999 WL 35353, at *6 (N.D.Ill. Jan. 11, 1999). Indeed, "[g]enerally speaking, an unfair competition claim requires a misappropriation of the labors and expenditures of another, i.e. one party reaps where another has sown."[3] *Lynch Ford, Inc. V. Ford Motor Company, Inc.,* 957 F.Supp. 142, 146 (N.D.Ill. 1997). As ISR argues, RGIFTS' claims, as pled, do not fit the bill, and RGIFTS' claim for unfair competition in Count 7 is thus dismissed without prejudice with leave to replead. *See, e.g., Informix Software, Inc. v. Oracle Corp.*, 927 F.Supp. 1283, 1287 (N.D.Cal. 1996) (dismissing a claim for unfair competition under California law arising from defendant's demands that plaintiff stop infringing on its registered marks). Of course, the veracity of RGIFTS' claims that those trademarks should be cancelled as generic will be left to a decision on the merits as those claims remain pending before the Court.

## CONCLUSION

For the foregoing reasons, plaintiff's partial motion to dismiss is granted in part and denied in part as described above.

**DATE: July 31, 2024**

**Jeffrey I. Cummings
United States District Court Judge**

---

[3] For example, in ISR's own complaint it alleges common law unfair competition based on RGIFTS' use of ISR's registered marks.

15