**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

INTERNATIONAL STAR REGISTRY
OF ILLINOIS, LTD,

      Plaintiff, Counter-Defendant

      v.

RGIFTS LIMITED,

and

MATEI SUPPLY CORP.,

      Defendants, Counter-Plaintiff.

Civil Action No. 21-CV-6446

District Judge Sharon J. Coleman

Magistrate Judge Heather K. McShain

**DEFENDANT RGIFTS LIMITED'S SECOND AMENDED COUNTERCLAIMS**

    Defendant RGIFTS LIMITED ("RGIFTS"), by and through its attorneys, The Law Offices

of Konrad Sherinian, LLC, hereby counterclaims against INTERNATIONAL STAR REGISTRY

OF ILLINOIS, LTD. ("ISR") and for its COUNTERCLAIMS, states as follows:

**PARTIES, JURISDICTION & VENUE**

    1.   RGIFTS is a company headquartered in the Country of Wales of the United Kingdom,

with an address at W2 Business Centre, Wellington House, Wellington Street, Cardiff, South

Glamorgan, Wales, CF11 9BE, United Kingdom.

    2.   RGIFTS operates a star registry through which a person can purchase the right to name

a star in RGIFTS star registry.

    3.   On information and belief, ISR is an Illinois corporation having its principal place of

business at 1461 Paddock Drive, Northbrook, IL 60062.

    4.   This Court has subject matter jurisdiction over this counterclaim as this counterclaim

arises under the trademark laws of the United States 15 U.S.C. § 1121 *et seq.,* and therefore

presents a federal question (28 U.S.C. § 1331) and one in which exclusive jurisdiction exists in the

District Courts of the United States (28 U.S.C. § 1338(a)). The Court has supplemental jurisdiction for the state law claims under 28 U.S.C. § 1367 as these claims are joined with related claims under the Trademark Laws of the United States such that they form part of the same case or controversy or derive from a common nucleus of operative fact.

5.  Personal jurisdiction and venue are appropriate in this district as Counter-Defendant has initiated the present action in this district and consented to jurisdiction and venue here.

### THE FOUNDING OF RGIFTS AND
### THE ADOPTION OF STAR NAME REGISTRY

6.  RGIFTS started its star naming service in the UK and then expanded to other regions.

7.  RGIFTS also operates a consolidated star register at the site star-register.org.

8.  The consolidated star register holds the names assigned by customers to various stars from around the world.

9.  STAR REGISTER is the generic term for a registry of stars; i.e., a registry that contains the names of various stars.

10. The brand STAR NAME REGISTRY was selected as it encompassed the most searched for terms for star registry / star naming services on the largest search engine at the time.

### RGIFTS RAPIDLY GREW TO BECOME A
### LEADER IN STAR REGISTRY / NAMING SERVICES

11. RGIFTS entered the star registry / star naming marketplace in 2014.

12. After entering the star registry / star naming market RGIFTS rapidly grew to become an industry leader through a combination of innovative high value product offerings, superior management and execution, aggressive pricing, and industry best marketing.

13. Almost since RGIFTS' founding, ISR has attempted to stymie and interfere with RGIFTS' growth.

14. In particular, in 2016, ISR attempted to have a major internet advertising provider ("COMPANY X") stop doing business with RGIFTS.

15. While ISR was unsuccessful in 2016 in preventing RGIFTS from doing business with COMPANY X, it later reached a written agreement with COMPANY X ("unlawful Agreement"),[Dkt 113] (SEALED – HIGHLY CONFIDENTIAL, AEO).

16. The third clause of the RECITALS of the unlawful Agreement identifies RGIFTS by its business name Star-Name-Registry as one of two independent third parties offering certain deals on the COMPANY X platform. *See* [Dkt 113] at 1.

17. In the fourth clause of the RECITALS of the unlawful Agreement, COMPANY X represents that "neither of the third party merchants who published the [deals] had total sales (in USD) on those deals over the life of their respective accounts exceeding the sales on ISR's [COMPANY X] deal in the fourth quarter of 2018 alone." *See id.*

18. Paragraph 5 of the unlawful Agreement prohibits COMPANY X from using or allowing third parties to use on its platform

> any of the following words, marks, or phrases in connection with star naming services: (1) 'star registry,' (2) 'international star,' (3) 'star register,' (4) 'star name register,' (5) 'star name registry,' (6) 'star registrant,' (7) 'star registration,' and/or (8) 'star regis….' (meaning with those letters "regis" followed by any other letters). . . . The restriction on these terms shall apply regardless of the capitalization or punctuation of these terms and/or where used in conjunction with other unrestricted words and phrases.  For example, [COMPANY X] will not use or allow to be used on its platform the word/mark 'star-name-registry' in connection with star naming services even though the phrase is separated by dashes instead of spaces.

*See id.* at 3.

19. Paragraph 5 of the unlawful Agreement further states:

> If **ISR identifies** that a merchant on the [COMPANY X] Platform is **selling star naming services and is using** ISR's trademarks and service marks International Star Registry or Star Registry or **words**, marks **or phrases prohibited by this**

3

**paragraph** then [COMPANY X] will **cease doing business of star naming services** with such entities.

*See id.* (emphasis added).

20. The unlawful Agreement shocks judicial sensibilities and violates standards of commercial morality in several respects as follows.

21. The unlawful Agreement is an abusive attempt by ISR to expand its (purported) rights in its actual *marks*, to prohibit not only the use of marks, but also that of common *words* or *phrases* that include "star regis…" and/or "international star," in any way "in connection with star naming services."

22. As set forth in more detail below in connection with the genericness of ISR's asserted marks, common phrases of the form "star regis…" are *synonymous* with the very star naming services in connection with which the unlawful Agreement prohibits their use, while "international star" can refer to any star-related service provided in multiple countries.

23. The prohibition is not limited by context or to existing instances of use of the "words" or "phrases;" rather, the restriction applies "regardless of the capitalization or punctuation of these terms and/or where used in conjunction with other unrestricted words and phrases." *See id.*

24. The prohibition therefore encompasses uses of the "words" or "phrases" according to their common meanings to describe or generically refer to star naming services themselves rather than to associate star naming services with a source.

25. Through the unlawful Agreement ISR abused its sales dominance over its two identified competitors, acknowledged expressly in the RECITALS (*see id.* at 1), to impose an expansion of its (purported) trademark rights to prohibit use of a list of "words" or "phrases" that ISR itself arbitrarily dictated.

26. The unlawful Agreement grants ISR sole discretion to "identify" a merchant that is selling star naming services and is using the prohibited "words" or "phrases" and states that COMPANY X will "cease doing business of star naming services with such entities." *See id.*

27. The unlawful Agreement does *not* provide terms under which COMPANY X may *resume* doing business with any such entity. *See generally id.*

28. On or around the effective date of the unlawful Agreement, COMPANY X ceased doing business with RGIFTS.

29. On numerous occasions, ISR has made false disparaging statements about RGIFTS to RGIFTS customers, including (1) that RGIFTS is a "copycat" company, (2) that RGIFTS is one of several "imposter" companies, and (3) that RGIFTS is a "counterfeit firm," while encouraging and providing links and instructions for customers to report RGIFTS as a "scammer" to the Better Business Bureau, the Federal Trade Commission (FTC), and/or the Attorney General of Illinois or the customer's state. *See* redacted[1] correspondence attached hereto as Exh. 1.

30. After ISR failed to intimidate RGIFTS into leaving the market for star registry / star naming services, ISR filed this lawsuit, and during the discovery process, much of the tortious conduct that was described above was uncovered, resulting in these amended counterclaims.

31. As set forth below, RGIFTS seeks damages in an amount to be determined at trial, including punitive damages, as well as other relief as set forth below.

**INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD.
HAS ACTUAL KNOWLEDGE THAT THE TERMS THAT IT
IS ATTEMPTING TO ASSERT AS A TRADEMARK ARE GENERIC**

---

[1] Although the corresponding Bates pages produced by ISR were redesignated as not confidential, RGIFTS has redacted names and other identifying information from the correspondence in consideration of its customers' privacy.

5

32. ISR is the owner of record for the five Registrations it asserts in its Complaint (the "Registrations"), which are set forth below:

| Registered Trademarks | Registration Nos. | Cancellation Sought for Class(es): |
|---|---|---|
| STARREGISTRY.COM | 2584337 | IC 035, 042 |
| STAR REGISTRY | 2101459 | IC 016 |
| INTERNATIONAL STAR REGISTRY | 2101458 | IC 016 |
| INTERNATIONAL STAR REGISTRY | 1420543 | IC 042 |
| INTERNATIONAL STAR REGISTRY | 1356046 | IC 035 |

33. The goods and services described in each class of each Registration amount to nothing more than registering stars and/or such ancillary goods/services, which in each case are provided as a standard industry practice in connection with registering stars.

34. For two of its registrations, ISR was required to disclaim the term STAR REGISTRY.

35. A summary of the disclaimers follows in the table below.

| Reg. No. | Word Mark | Disclaimer |
|---|---|---|
| 1356046<br><br>**Supplemental Register** | INTERNATIONAL STAR REGISTRY | STAR REGISTRY |
| 1420543 | INTERNATIONAL STAR REGISTRY | STAR REGISTRY |

36. Both of the marks in the above table are registered in class 35 for services that include designating stars with names selected by customers.

37. The required disclaimer reflects the opinion of the USPTO that STAR REGISTRY does not qualify for trademark protection.

38. In the '543 registration, ISR describes the services it offers under the mark INTERNATIONAL STAR REGISTRY as "DESIGNATING CELESTIAL STARS WITH

NAMES SELECTED BY CUSTOMERS AND PROVIDING CERTIFICATES AND A **REGISTRY** IN RECOGNITION THEREOF." *See* '543 registration certificate (emphasis added).

39. For Reg. No. 2101458 for INTERNATIONAL STAR REGISTRY, ISR was not required to disclaim STAR REGISTRY.

40. For Reg. No. 2101459 for STAR REGISTRY, ISR was not required to disclaim STAR REGISTRY.

41. Reg. Nos. 2101458 and 2101459 are registered in class 16 for booklets, brochures, charts and sheets identifying celestial bodies.

42. For Reg. No. 2,584,337 for STARREGISTRY.COM, ISR was not required to disclaim STAR REGISTRY.

43. Reg. No. 2,584,337 is registered in both class 16 for booklets, brochures, charts and sheets identifying celestial bodies and class 35 for designating stars with names selected by customers.

44. Reg. No. 2,584,337 was originally rejected for failing to disclaim STAR REGISTRY, but was issued without the disclaimer after ISR's attorney argued that other marks (see above) had been issued without the disclaimer.

45. The Trademark Office requires a disclaimer when the examining attorney forms a belief that subject matter of the disclaimer cannot be protected as a trademark.

46. The Applicant's agreement to the disclaimer indicates the Applicant's agreement that the disclaimer is appropriate and the disclaimed subject matter cannot be protected as a trademark.

A. **The Ordinary Meaning of ISR's Registered Trademarks Is Generic for Designating and Publishing Names of Stars in a Register/Registry**

47. Merriam-Webster's Collegiate Dictionary, Eleventh Edition, 2012 ("Webster"), defines "star" as "a natural luminous body visible in the sky esp. at night." *See* Merriam-Webster excerpts, attached hereto as Exh. 2.

48. Webster defines "registry" as "an official record book" or "an entry in a register." *See* Exh,. 3.

49. Webster defines "register" as "a written record containing regular entries of items or details." *See* Exh. 2.

50. The term "Star Registry" is generic for services relating to the placement of star names in a register.

51. ISR attempts to use the term "Star Registry" as a Trademark even when accorded its generic meaning.

52. Webster defines "international" as "of, relating to, or affecting two or more nations," or "known, or reaching beyond national boundaries." *See id*.

53. The term "International Star Registry" is generic for star registry services that are offered in multiple countries.

54. ISR attempts to use the term "International Star Registry" as a Trademark even when accorded its generic meaning.

55. The most-commonly used top-level domain extension is ".com."

56. Adding ".com" to the generic term "star registry" does not create a non-generic trademark; rather, "starregistry.com" is a generic term for star registry goods and services that are provided online and/or available to purchase online.

**B. <u>Each Class of Each ISR Registration Includes Listed Goods and/or Services for which the Wording "STAR REGISTRY" Is or Has Become Generic</u>**

For each class of each Registration, in turn, the following paragraphs set forth the description of goods and/or services and why STAR REGISTRY is or has become generic for goods and/or services included in the description.

57. **Registration No. 2584337 ("STARREGISTRY.COM") in IC 035:** "Mail order catalog services featuring printed publications, booklets, brochures, charts and sheets identifying celestial bodies and their locations and information pertaining to astronomy. First use: 19970500. First use in commerce: 19970500."

58. A star registry cannot compete commercially without providing materials "identifying celestial bodies" (stars) "and their locations and information pertaining to astronomy" to its customers and potential customers. As illustrated in numerous third party examples cited herein, star registries promote their goods and services as providing a unique gift for a customer's loved one in connection with a star that can be *located and seen* in the night sky (*see* examples in Table 1: Third-Party Generic Commercial Uses, attached hereto as Exh. 3), recognizing that being able to view a registered star is considered by customers to be an essential component of the value they receive when paying for the service of registering the star. It is therefore standard practice for a star registry, at a bare minimum, to provide a catalog (i.e., a listing of stars available for name registration) containing information identifying each available star and allowing the customer (and/or their gift recipient) to locate and view the star. *See* Table 1, Exh. 3. In addition, customers use materials with "information pertaining to astronomy" such as a star's relative brightness, nearest neighboring stars, and/or a constellation to which it belongs, without which they would have no meaningful basis on which to select a star to be registered with their chosen name. Such materials are often made available in print. *See id.* The component "STARREGISTRY," composed of the wording "STAR REGISTRY" without a space, is therefore generic for the service

9

of providing such print materials, which are ancillary to the designation of a customer's chosen name of a star for publication in a registry, as they provide information to customers that a star registry could not expect to compete in its industry without providing. In addition, ".COM" is merely a generic top-level domain component of a URL address on a global computer network (the Internet).[2] As such, the mark "STARREGISTRY.COM" is generic for the described services in IC 035 on a global computer network.

59. **Registration No. 2584337 ("STARREGISTRY.COM") in IC 042:** "Novelty gift services, namely, designating celestial stars with names selected by customers and providing certificates to customers by means of the global computer network; providing information relating to stars and astronomy via the global computer network; naming services, namely, naming celestial stars with names selected by customers via the global computer network and by telephone. First use: 19970500. First use in commerce: 19970500."

60. With reference to the many examples given in the next section, designating stars with names selected by customers is a core service of a star registry. Therefore, the mark "STARREGISTRY.COM" is generic for the described services in IC 042 on a global computer network.

61. **Registration No. 2101459 ("STAR REGISTRY") In IC 016:** "Printed publications, namely, booklets, brochures, charts, and sheets identifying celestial bodies, pertaining to astronomy and for persons having an interest in astronomy and topics related thereto. FIRST USE: 19790600. FIRST USE IN COMMERCE: 19790600."

---

[2] As defined by the Internet Assigned Numbers Authority (IANA) in its "Root Zone Database" *See* IANA Root Zone Database, *available at* https://www.iana.org/domains/root/db ("The Root Zone Database represents the delegation details of top-level domains, including gTLDs such as .com. . . .").

62. For the same reasons explained above regarding the '337 Registration, a star registry cannot operate commercially without providing materials "identifying celestial bodies, pertaining to astronomy," which are often made available in print. Therefore, the mark "STAR REGISTRY" of the '459 Registration is generic for the described goods in IC 016.

63. **Registration No. 2101458 ("INTERNATIONAL STAR REGISTRY") in IC 016:** "Printed publications, namely, booklets, brochures, charts, and sheets identifying celestial bodies, pertaining to astronomy and for persons having an interest in astronomy and topics related thereto. FIRST USE: 19790600. FIRST USE IN COMMERCE: 19790600."

64. For the same reasons explained above regarding the '337 Registration, a star registry cannot operate commercially without providing materials "identifying celestial bodies, pertaining to astronomy," which are often made available in print. Therefore, the mark "INTERNATIONAL STAR REGISTRY" of the '458 Registration is generic for the described goods in IC 016.

65. **Registration No. 1420543 ("INTERNATIONAL STAR REGISTRY") in IC 042:** "Novelty gift services, namely, designating celestial stars with names selected by customers and providing certificates and a registry in recognition thereof. First use: 19790600. First use in commerce: 19790915."

66. As explained in the Introduction and with reference to the many examples given in the next section, "designating stars with names selected by customers and providing . . . a registry in recognition thereof" is a core service of a star registry. In fact, in both the '046 and '543 Registrations, ISR was required to disclaim any exclusive right to the term STAR REGISTRY apart from the full mark, reflecting the opinion of the USPTO that STAR REGISTRY does not qualify for trademark protection. Furthermore, following the rise of commerce on the internet that began years after the respective dates of the '046 and '543 Registrations (in 1985 and 1986,

11

respectively), online star registries offering goods and services in multiple countries eventually became and still remain ubiquitous, as reflected in many examples described below. In view of the foregoing, the mark "INTERNATIONAL STAR REGISTRY" of the '543 Registration is or has become generic for the described services in IC 042.

67. **Registration No. 1356046 ("INTERNATIONAL STAR REGISTRY") in IC 035:** "Naming different individual stars in a star catalog with the name designated by customers, providing certificates thereof, and placing the catalog on file with public libraries. First use: 19790600. First use in commerce: 19790915."

68. As explained in the Introduction and with reference to the many examples given in the next section, designating stars with names selected by customers is a core service of a star registry. In fact, in both the '046 and '543 Registrations, ISR was required to disclaim any exclusive right to the term STAR REGISTRY apart from the full mark, reflecting the opinion of the USPTO that STAR REGISTRY does not qualify for trademark protection. Furthermore, following the rise of commerce on the internet that began years after the respective dates of the '046 and '543 Registrations (in 1985 and 1986, respectively), online star registries offering goods and services in multiple countries eventually became and still remain ubiquitous, as reflected in many examples described below. In view of the foregoing, the mark "INTERNATIONAL STAR REGISTRY" of the '046 Registration is or has become generic for the described services in IC 035.

C. **ISR's Registered Trademarks Are or Have Become Generic as Evidenced by Widespread Generic Use**

69. The two words "star" and "registry" (as well as their formatives, including but not limited to "register" and "registration") of the generic wording "star registry" are used by RGIFTS

as well as other third parties to refer to registries of names of stars chosen by customers, as well as to ancillary goods and services such as certificates memorializing the registered star name and print materials with information about registered stars and stars available to be registered. Table 1, attached hereto as Exh. 3, is a representative sample of such usage ("Third Party Generic Commercial Uses"). As seen in Table 1, in no fewer than **sixteen** different third-party commercial star registry websites, the words "star" and "registry" or its formatives, including "register" (both as a noun and as a verb) and "registration," are used together generically to refer to a star registry, that is, a registry in recognition of stars being designated with names selected by customers. (In some instances, "star" and "regist-" also appear in the third parties' own marks, but such generic use appears in every instance).

70. The numerous third parties offering star naming services use the terms international, star, and registry (as well as its verb form "register" and related noun form "registration") in their generic senses as is typical throughout the industry.

71. On information and belief, ISR has been aware of most, if not all, of the above third parties for many years, including before June 30, 2021, the date of execution of ISR's improper agreement with COMPANY X. *See* [Dkt 113].

72. Indeed, **ISR itself**, in its own standard letter to customers who have purchased a star registration from ISR, uses the term "registered" generically to refer to its own service of registering a star's name and coordinates, as seen in the below image (produced in discovery as the Bates numbered page ISR1005491), thus: "The new star name and telescopic coordinates will be **registered** in the International Star Registry's vault in Switzerland . . . ."



73. Similarly, "star" and "regist-" are found in widespread generic use together in news and other general-circulation media, to refer to star registries and/or their goods and services. Table 2, attached hereto as Exh. 4, is a representative sample of such usage ("Generic Uses in Media").

74. The USPTO itself has adopted the term "star registry" to refer generically to a type of business which "provides the service of assigning the name of a customer to a star" and "providing our official certificate to the customer." *See* Reg. No. 2,285,485, attached hereto as Exh. 5.

75. The USPTO advised the applicant in U.S. Trademark Application No. 87591666 ('666 trademark application) for the mark AMERICAN STAR REGISTRY that "if the application is amended to seek registration on the Principal Register under Trademark Act Section 2(f) or on Supplemental Register, applicant will be required to disclaim 'star registry' because such wording

14

appears to be *generic* in the context of applicant's goods and/or services." *See* '666 trademark application, Office Action dated December 7, 2017, attached hereto as Exh. 6.

76. The applicant's services as identified in the above-referenced '666 trademark application included "NAMING SERVICES, NAMELY, NAMING CELESTIAL STARS WITH NAMES SELECTED BY CUSTOMERS VIA THE GLOBAL COMPUTER NETWORK" *See* TEAS RF New Application No. 87591666, attached hereto as Exh. 7.

### D. **ISR Has Failed to Take Action Against Generic Uses of "Star" and "Regist-"**

77. Other than Global Star Registry, as discussed below, on information and belief, ISR has taken no action to enforce the Registrations against the Third-Party Generic Commercial Uses, apparently by as many as **fifteen** other third parties, of the terms "star" and "regist-" in combination, to promote the third parties' competing goods and services of the same type as identified in the Registrations.

78. On information and belief, ISR has taken no action to enforce the Registrations against the Generic Uses in Media of the terms "star" and "regist-" to refer broadly to companies in the star registry industry in general and/or their goods and services, listed in Table 2. *See* Exh. 4.

79. Indeed, **ISR itself** uses the term "registered" to refer to its own service of placing a star's name and coordinates in a vault, as described above.

80. ISR's one attempt to enforce the Registrations in a UDRP complaint against Global Star Registry AB was unsuccessful, as summarized in the following paragraphs:

81. On or about November 27, 2005, ISR submitted a complaint to the National Arbitration Forum ("NAF") seeking to have the domains globarstarregistry.com and globalstarregistry.org transferred from MyStar – Global Star Registry AB to ISR, pursuant to the Rules of the Uniform

Domain Name Dispute Resolution Policy (UDRP) used by the Internet Corporation for Assigned Names and Numbers (ICANN).

82. In a decision denying the relief sought by ISR ("NAF Decision," attached hereto as Exh. 8), the NAF found it to be "unquestionable" that globalstarregistry.com and globalstarregistry.org were similar to ISR's marks as they contained the term "STAR REGISTRY." See Ex4. 2 at page 2, under "DISCUSSION > Identical and/or Confusingly Similar."

83. Nonetheless, the NAF found that the globalstarregistry.com and globalstarregistry.org were not confusingly similar to ISR's marks. See Exh. 8, page 2, paragraphs preceding and following "DECISION."

84. In particular, the NAF found in its decision issued in Claim Number FA0511000601438 that 1) ISR had disclaimed the term "star registry" in certain trademark application, 2) that the term "star registry" referred to activities or business of both parties to the claim, and 3) that a prior decision of the First Board of Appeal of the Office for Harmonization in the Internal Market had refused registration of INTERNATIONAL STAR REGISTRY.

85. Given that "each of the companies engaged in the star naming business maintains its own registry, register or index of named star[s]," the NAF found that "the words 'star registry' appear to be a proper description of such activity," in mind of which "the distinguishing factor in ISR's domain names is the 'global' term, while the distinguishing word in Complainant's INTERNATIONAL STAR REGISTRY marks is the word 'international.'" See Exh. 8 page 2, penultimate paragraph of underlined text.

86. Based on dictionary definitions and sight and sound aspects, the NAF concluded that "the addition of the term 'global' to 'star registry' is sufficient to distinguish ISR's domain names

from Complainant's marks in the Internet environment." See Exh. 8, page 2, dictionary definitions and following paragraph.

87. Based on the reasons set forth above and other reasons, the NAF denied ISR's claim. See Exh. 8 page 2, "**DECISION**."

88. In view of the foregoing, on information and belief, ISR has not successfully enforced any of the Registrations against any of the Third Party Generic Uses, reinforcing their weight as evidence that the wording "STAR REGISTRY" of the Registrations is or has become a generic name for the service of registering a star, that is, designating the star with a name chosen by a customer and providing a registry in recognition of the star name designation as well as a generic label for ancillary goods and services provided in connection with registering a star, including those described in each of the Registrations.

## COUNT 1

### Cancellation of U.S. TM Reg. No. 1,420,543

89. RGIFTS repeats and realleges the previous paragraphs of the Counterclaims.

90. The mark INTERNATIONAL STAR REGISTRY as used on or in connection with the services recited in Reg. No. 1,420,543 always has been and/or has become and is the generic name for such services.

91. Therefore, Reg. No. 1,420,543 is subject to cancellation under 15 U.S.C. § 1064(3) on the basis of genericness in its entirety.

## COUNT 2

### Cancellation of U.S. TM Reg. No. 1,356,046

92. RGIFTS repeats and realleges the previous paragraphs of the Counterclaims.

93. The mark INTERNATIONAL STAR REGISTRY as used on or in connection with the services recited in Reg. No. 1,356,046 always has been and/or has become and is the generic name for such services.

94. Therefore, Reg. No. 1,356,046 is subject to cancellation under 15 U.S.C. § 1064(3) on the basis of genericness in its entirety.

## COUNT 3

### Cancellation of U.S. TM Reg. No. 2,584,337

95. RGIFTS repeats and realleges the previous paragraphs of the Counterclaims.

96. The mark STARREGISTRY.COM as used on or in connection with the services recited in Reg. No. 2,584,337 always has been and/or has become and is the generic name for such services.

97. Therefore, Reg. No. 2,584,337 is subject to cancellation under 15 U.S.C. § 1064(3) on the basis of genericness in its entirety.

## COUNT 4

### Cancellation of U.S. TM Reg. No. 2,101,458

98. RGIFTS repeats and realleges the previous paragraphs of the Counterclaims.

99. The mark INTERNATIONAL STAR REGISTRY as used on or in connection with the services recited in Reg. No. 2,101,458 always has been and/or has become and is the generic name for such services.

100. Therefore, Reg. No. 2,101,458 is subject to cancellation under 15 U.S.C. § 1064(3) on the basis of genericness in its entirety.

## COUNT 5

### Cancellation of U.S. TM Reg. No. 2,101,459

101. RGIFTS repeats and realleges the previous paragraphs of the Counterclaims.

102.   The mark STAR REGISTRY as used on or in connection with the services recited in Reg. No. 2,101,459 always has been and/or has become and is the generic name for such services.

103.   Therefore, Reg. No. 2,101,459 is subject to cancellation under 15 U.S.C. § 1064(3) on the basis of genericness in its entirety.

### COUNT 6

### Tortious Interference with Business Relationships

104.   RGIFTS repeats and realleges the previous paragraphs of the Counterclaims.

105.   ISR has engaged in wrongful conduct and tortiously interfered with RGIFTS relationships with its customers, suppliers, vendors, partners and others by at least the following acts:

>     a.   falsely telling customers of RGIFTS (1) that RGIFTS is a "copycat" company, (2) that RGIFTS is one of several "imposter" companies, and (3) that RGIFTS is a "counterfeit firm," while encouraging and providing links and instructions for customers to report RGIFTS as a "scammer" to the Better Business Bureau, the Federal Trade Commission (FTC), and/or the Attorney General of Illinois or the customer's state; and
>
>     b.   entering into an unlawful, anticompetitive and exclusionary contract with COMPANY X.

106.   The wrongful conduct and tortious interference of ISR are outside the scope of mere competition, and they have actually and proximately caused, and, unless restrained and enjoined, will continue to cause RGIFTS severe, immediate and irreparable harm, damage and injury for which RGIFTS has no adequate remedy at law.

107.    Such wrongful conduct and tortious interference, in disregard of RGIFTS protectable business interests, has been deliberate, willful and malicious, and of such an aggravated character as to warrant imposition of punitive damages, attorneys fees, and costs in addition to compensatory damages and injunctive relief.

## COUNT 7

### Common Law Unfair Competition

108.    RGIFTS repeats and realleges the previous paragraphs of the Counterclaims.

109.    ISR has engaged in wrongful conduct and unfairly competed with RGIFTS by at least the following acts:

    a.   falsely telling customers of RGIFTS (1) that RGIFTS is a "copycat" company, (2) that RGIFTS is one of several "imposter" companies, and (3) that RGIFTS is a "counterfeit firm," while encouraging and providing links and instructions for customers to report RGIFTS as a "scammer" to the Better Business Bureau, the Federal Trade Commission (FTC), and/or the Attorney General of Illinois or the customer's state;

    b.   entering into an unlawful, anticompetitive and exclusionary contract with COMPANY X.

110.    The wrongful conduct and unfair competition of ISR are outside the scope of mere competition, and they have actually and proximately caused, and, unless restrained and enjoined, will continue to cause RGIFTS severe, immediate and irreparable harm, damage and injury for which RGIFTS has no adequate remedy at law.

111.    Such wrongful conduct and unfair competition, in disregard of RGIFTS protectable business interests, has been deliberate, willful and malicious, and of such an aggravated character

as to warrant imposition of punitive damages, attorneys fees, and costs in addition to compensatory damages and injunctive relief.

## PRAYER FOR RELIEF

Counter-Plaintiff RGIFTS requests relief as follows:

a) An order cancelling Reg. No. 1,420,543 in its entirety;

b) An order cancelling Reg. No. 1,356,046 in its entirety;

c) An order cancelling Reg. No. 2,584,337 in its entirety;

d) An order cancelling Reg. No. 2101458 in its entirety;

e) An order cancelling Reg. No. 2101459 in its entirety;

f) An award of damages in an amount to be determined at trial sufficient to compensate RGIFTS for the tortious interference conducted by ISR in RGIFTS business relationships;

g) An order finding that ISR's tortious interference with RGIFTS' business relationships was willful, deliberate and malicious;

h) An award of damages in an amount to be determined at trial sufficient to compensate RGIFTS for ISR's unfair competition;

i) An order finding that ISR's unfair competition with RGIFTS was willful, deliberate and malicious;

j) An award of punitive damages sufficient to deter ISR from future tortious conduct;

k) An award of reasonable litigation costs and attorneys' fees; and

l) Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date:   August 21, 2024        By:   /s/ Konrad Sherinian
                                      An attorney for Defendants


Attorneys for Defendants

Konrad Sherinian
Depeng Bi
Jeffrey Dixon
The Law Offices of Konrad Sherinian, LLC
1755 Park Street, Suite # 200
Naperville, Illinois 60563
Phone: (630) 318-2606
Fax: (630) 364-5825
Email: ksherinian@sherinianlaw.net
Email: ebi@sherinianlaw.net
Email: jdixon@sherinianlaw.net
Email: courts@sherinianlaw.net