**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD., an Illinois Corporation, | ) ) ) | |
| Plaintiff/Counter Defendant, | ) ) | |
| v. | ) ) | Case No. 21-cv-06446 |
| RGIFTS LIMITED, a UK Company., | ) ) ) | |
| Defendant/Counter Claimant, | ) ) | |
| and, | ) ) | |
| MATEI SUPPLY CORP., a California Corporation, | ) ) ) | |
| Defendant. | ) | |

**INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD.'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS AND STRIKE RGIFTS LIMITED'S
SECOND AMENDED COUNTERCLAIMS**

Olivia Bedi
Kalia Coleman
Keyonn L. Pope
Shaun Zhang
Edgar Matias
RILEY SAFER HOLMES & CANCILA LLP
1 South Dearborn Street, Suite 2200
Chicago, IL 60603
Tel: 312-471-8700
obedi@rshc-law.com
kcoleman@rshc-law.com
kpope@rshc-law.com
szhang@rshc-law.com
ematias@rshc-law.com

*Counsel for Plaintiff/Counter-Defendant
International Star Registry of Illinois, Ltd.*

Plaintiff/Counterclaim Defendant International Star Registry of Illinois, Ltd. ("ISR"), by counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, states as follows its Reply Brief in Support of its Motion to Dismiss and Strike Counts 6 and 7 of the Second Amended Counterclaims ("SACC") (Dckt. #175) filed by Defendant/Counterclaim Plaintiff RGifts Limited ("RGIFTS"). This Court should dismiss Counts 6 and 7 of the SACC, with prejudice, for the reasons stated below.

## INTRODUCTION

RGIFTS' arguments in opposition to ISR's Motion boil down to one self-serving assertion: ISR's trademarks must be generic because RGIFTS says so and, therefore, ISR's efforts to enforce those trademarks must be tortious and unfair. But contrary to RGIFTS' conclusory allegations, ISR's trademarks have been registered, and therefore presumed valid, for nearly 40 years (the "Registered Marks").[1] (Dckt. #1, ¶ 16.) Over the years, ISR has invested considerable sums of time, money, and resources in promoting and advertising its use of the Registered Marks, which have gained widespread public recognition and goodwill. (*Id.* ¶ 16–28.)

RGIFTS' heavy dose of conclusory certainty cannot overcome the presumption of non-genericness attached to ISR's Registered Marks, nor does it change the fact that RGIFTS' amended tortious interference and unfair competition counterclaims remain baseless and deficient. For instance, RGIFTS asserts that "indisputable facts demonstrate that ISR's marks, directed to terms like STAR REGISTRY, are a) generic, and b) known by ISR to be generic." Yet, such allegations are the very basis for Counts 1–5 of RGIFTS' counterclaims, which are still pending in this lawsuit.

---

[1] ISR obtained the first of these marks in 1985, and the others in 1986, 1997, and 2002. With one exception, all of ISR's Registered Marks are incontestable, with the latest obtaining that status over 16 years ago. ISR's oldest Registered Mark (No. 1356046) appears on the Supplemental Register. Marks on the supplemental register cannot obtain incontestable status. All of ISR's Registered Marks enjoy the presumption that they are valid. (*See* Dckt. #184 at 1.)

Indeed, ISR's trademarks were valid when ISR enforced them (*i.e.*, the enforcement actions that RGIFTS claims were tortious and unfair) and remain so today. RGIFTS' *ipse dixit* that such trademarks are generic puts the cart before the horse and should, at this stage, carry no weight.[2]

RGIFTS' sideshow complaint that ISR has not taken a deposition should be disregarded. Discovery relating to RGIFTS' original baseless, if not frivolous, counterclaims were stayed (Dckt. #155) and then dismissed by this Court (Dckt. #165). RGIFTS then amended and refiled the same counterclaims a month ago, which was less than a month before the then-close of discovery (which has since been extended by another month to October 24, 2024). ISR's inability to depose RGIFTS was caused by the latter's attempts to complicate and delay the case by inserting baseless counterclaims. (*See* Dckt. #184 at 2.) In fact, ISR believes discovery relating to RGIFTS's amended tortious interference and unfair competition counterclaims should remain stayed until the present Motion has been decided. ISR has filed a separate motion for clarity on the issue (Dckt. #191), which RGIFTS opposed (Dckt. #198). The parties plan to complete discovery on the trademark claims this month.

Finally, similar to its conclusory allegations that ISR's decades-long trademarks are "generic," RGIFTS' accusations that ISR's settlement agreement with COMPANY X is a "sham," is not true simply because it says it is. As explained in ISR's opening brief and below, ISR's settlement agreement with Company X reflects trademark enforcement efforts which are protected under the *Noerr-Pennington* doctrine. RGIFTS fails to plead a plausible basis for why the sham exception to the doctrine applies. The reason is simple: ISR's lawsuit against Company X and the

---

[2] Ironically, while baldly asserting ISR's registered, presumed-valid trademarks are generic, RGIFTS simultaneously touts as "distinctive" the fact that the USPTO merely published its competing trademark for opposition (*i.e.*, **not issued**). (Dckt. #195 at 4.)

resulting settlement agreement are the exact types of efforts to enforce registered trademarks that are protected by *Noerr-Pennington*.

On the other hand, the only "shams" in this litigation are RGIFTS' attempts to frustrate ISR's enforcement of its trademark rights by stubbornly shoehorning supposed antitrust counterclaims into the case (which this Court rightfully dismissed, Dckt. #165), and RGIFTS' current attempt to repackage its hopeless antitrust claims under the guise of tortious interference and unfair competition. In so doing, RGIFTS asks the Court to endorse its erroneous position that a trademark owner's bona fide attempts to enforce its trademark constitutes tortious interference and unfair competition. The Court should reject that argument. It is not illegal for a trademark owner like ISR to protect their Registered Marks. To the contrary, it is the very right granted to a registered trademark owner.

## ARGUMENT!

### A. RGIFTS Has Not Pled A Plausible Claim For Tortious Interference With A Business Relationship

At a minimum, RGIFTS has not plausibly pled that ISR's actions to enforce its registered, presumed-valid trademarks amount to "intentional[] and unjustifiabl[e] interfere[ence]." *Pactiv, LLC v. Multisorb Techs., Inc.*, 63 F. Supp. 3d 832, 841 (N.D. Ill. 2014) (*citing Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir.1998)).

Agreement With Company X

RGIFTS' arguments that ISR's enforcement of the Registered Marks was "unjustifiable" rest on one self-serving premise: ISR's litigation against Company X and the resulting settlement agreement was a sham "because ISR's so-called 'registered trademarks' are (and were) generic, and ISR knew that they were generic at the time it entered into an agreement with COMPANY X." (Dckt. #195 at 5.) RGIFTS' arguments fail for at least a couple of reasons.

3

First, RGIFTS' argument that the term "star registry" was disclaimed during the prosecution of ISR's earliest trademarks—Registration Nos. 1,420,543 and 1,356,046 for "International Star Registry"—carries no weight. Eleven years *after* the issuance of those trademarks, ISR separately registered the mark "Star Registry" in the USPTO's Principal Trademark Register, which has long since achieved "incontestable" status. (Registration No. 2,101,459; *see* Dckt. #1, ¶ 16.) The issuance of the "Star Registry" mark, as with all of ISR's Registered Marks, reflects the considerable efforts and resources ISR has invested into promoting and advertising its business under the Registered Marks throughout the United States. (*See* Dckt. #1, ¶ 17.)

Second, the "sham" exception to the *Noerr-Pennington* doctrine does not apply here. Under the doctrine, the "sham" exception only applies when the party's petitioning activity is "objectively baseless" meaning that "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993). "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.* Under this subjective analysis, "the court should focus on whether the baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor[.]'" *Id.* at 60-61. "This two-tiered process requires a plaintiff to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of the suit's economic viability." *Id.* at 61.

"[T]he essential question is . . . whether the suit was a sham at the time it was filed." *In re Wellbutrin Antitrust Litig.*, 868 F.3d 132, 148–49 (3d Cir. 2017) (citation omitted); *see also Pactiv, LLC,* 63 F. Supp. 3d at 842 (holding that, even though the plaintiff's patents were later declared invalid, there was "nothing to suggest that [the plaintiff] would have had any reason to think that

its duly granted patents were illegitimate at the time it filed the lawsuit."). To that end, the Supreme Court cautions courts not to "engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation." *Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 60 n.5.

In its opposition, RGIFTS does not even attempt to engage in this legal inquiry. (*See* Dckt. #195 at 11.) It's telling RGIFTS' only argument is to cry "sham" and prematurely litigate its case that ISR's trademarks are generic. But those allegations will be fought in counterclaim Counts 1– 5. (*See* Dckt. #175 at 17–19.) RGIFTS should not be allowed to assume the outcome of those counterclaims to allege that ISR's effort to enforce its valid trademarks was a sham.

It is RGIFTS' burden to show that ISR's efforts to protect its Registered Marks lacked a reasonable basis, but RGIFTS completely ignores the strong presumptions attached to each of ISR's Registered Marks. As explained in ISR's opening brief, because all of ISR's marks are registered, ISR is "entitled to a presumption that the mark is not generic." *Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, No. 11 C 02242, 2013 WL 6839815, at *12 (N.D. Ill. Dec. 27, 2013). Further, all but one of ISR's Registered Marks are incontestable, meaning that they have been in continuous use for five years after being placed on the Principal Register. 15 U.S.C. § 1065. When a mark obtains incontestable status, "the registration provides 'conclusive evidence' of the mark's validity and the registrant's exclusive right to use that mark." *H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co.*, No. 16-cv-10096, 2017 WL 6733685, at *2 (N.D. Ill. Dec. 18, 2017) (citing 15 U.S.C. § 1115(b)).

RGIFTS' argument that ISR has not enforced its Registered Marks against all possible infringers rings hollow when RGIFTS' basis for claiming tortious interference and unfair competition is that ***ISR enforced its Registered Marks against RGIFTS***. (*See* Dckt. 195 at 7.)

5

Although RGIFTS claims that it has presented "extensive bases" demonstrating that 1) ISR's "registered trademarks" are generic, 2) ISR knew these marks were generic, and 3) even if the marks were not generic, the agreement "prohibits descriptive fair use" (*Id.* at 7–8), its conclusory arguments cannot overcome the presumption of non-genericness attached to ISR's Registered Marks. As this Court has recognized, it is simply not a "sham" when a party "attempts to protect a [valid and incontestable] trademark." *Thermos Co. v. Igloo Prods. Corp.*, No. 93 C 5826, 1995 WL 842002, at *14–15 (N.D. Ill. Sep. 27, 1995).

The two cases RGIFTS cites to support its arguments concerning the sham exception are inapposite. In one case, a court held that *Noerr-Pennington* did not protect a plaintiff that sought to "expand" its trademark rights by claiming infringement in a market not covered by its registration. *Scooter Store, Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 1114–15 (S.D. Ohio 2011). There is no such allegation here. In the other, the parties asserting the "sham" exception pled "sixteen pages of factual allegations" about why their conduct was non-infringing and did not violate an earlier settlement agreement between the parties. *See Heritage Guitar, Inc. v. Gibson Brands, Inc.*, No. 1:20-cv-229, 2021 WL 5879159, at *5–6 (W.D. Mich. Dec. 13, 2021). That is a far cry from RGIFTS baldly asserting that trademarks that have been valid and incontestable for decades are "generic."

At bottom, RGIFTS claims victim because ISR's settlement agreement with Company X allegedly deprives it of the ability to use "its own business name." (Dckt. #195 at 5.) But in so doing, RGIFTS asks the Court to ignore the fact that ISR's effort to protect its brand is the essential right granted to ISR through its Registered Marks. Nor, as explained in the opening brief, does the agreement preclude anyone, including RGIFTS, from operating on the Company X platform or

any related market. As the settlement agreement with Company X states, RGIFTS is free to operate on the Company X platform and in the discount market, *if it does not use infringing terms*.

As laid out in the Complaint, ISR has poured time, money, and resources into protecting its Registered Marks. (Dckt. #1, ¶ 16–28.) It is RGIFTS' blatant and continued infringement of those trademarks that is "unjustifiable," not ISR's efforts to protect them.

Alleged Communications With RGIFTS Customers

Despite not given leave by the Court, RGIFTS amended portions of its tortious interference counterclaims without seeking ISR's "written consent or the court's leave" as required by Fed. R. Civ. P. 15(a)(2). RGIFTS' unilateral conclusion that such amendments are "within the spirit of the leave to amend" granted by the Court in its July 31 Order (Dckt. #195 at 13), does not change the fact that the Court did not grant leave to the portions of the counterclaim that it subsequently amended. ISR should not have to treat RGIFTS' counterclaims as moving targets—exactly the sort of problem that will delay and frustrate ISR's ability to complete discovery and enforce its trademark case.

Nonetheless, despite its most recent amendments, RGIFTS has still failed to plead a viable tortious interference claim that ISR allegedly interfered with its customers. To support these allegations, RGIFTS points to ███████████████████████████████████████
███████████████████████████. (Dckt. 175, ¶ 29, Exh. 1.) Those communications were produced in this litigation as Bates numbered pages ISR1004678-1004762 and are attached hereto as Ex. 1. ████████████████████████████████████████████████
████████████████████████████████████████████████████. (Ex. 1.) ████████████████████████████████████████████
████████████████████████████████████████.

**B.     RGIFTS' Unfair Competition Counterclaim (Count 7) Fails For The Same Reasons**

The parties generally agree that RGIFTS' unfair competition counterclaim (Count 7) rises or falls together with its tortious interference counterclaim (Count 6). (*See* Dckt. #184 at 10–11, Dckt. #195 at 10.) Therefore, Count 7 of the SACC should be dismissed for the reasons stated above and in ISR's opening brief as Count 6.

**C.     RGIFTS Lacked Leave To Amend Its Counterclaims Relating To Trademark Invalidity**

RGIFTS admits that the "additional allegations set forth in ¶¶ 38 and 74-76 of the SACC" relate to its allegations that ISR's trademarks are generic. (Dckt. #195 at 13.) Although RGIFTS also claims the new allegations relate to ISR's "know[ledge] they are generic," its claim puts the cart before the horse—ISR's Registered Marks have never been invalidated as "generic," and ISR cannot "know" something that is not true. Therefore, such new allegations only relate to Counts 1–5 of the counterclaims, for which RGIFTS was not given leave to amend, nor has RGIFTS sought ISR's "written consent." Fed. R. Civ. P. 15(a)(2). They should be stricken.

**D.     The Heightened Pleading Standard Of Rule 9(b) Applies, But RGIFTS' Counterclaims Fail Under Either Rule 9(b) or 12(b)(6)**

The heightened pleading standard of "Rule 9(b) applies not only to claims of fraud but also to those that 'sound[] in fraud,' meaning those 'premised upon a course of fraudulent conduct.'" *Desmond v. Taxi Affiliation Serv. LLC*, 344 F. Supp. 3d 915, 923 (N.D. Ill. 2018), *citing Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). RGIFTS introduces such issues into its counterclaims by labeling ISR's efforts to enforce trademark rights—including the lawsuit against and settlement with Company X—as a "sham." Indeed, the very caselaw that RGIFTS cites makes it clear that "under Illinois law, the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process." *Pittsfield Dev., LLC v. Lynd*, No. 19-cv-01321, 2020 WL 6701104, at *7 (N.D. Ill. Nov. 13, 2020) (citations and internal

quotations omitted). Thus, "Plaintiffs may not base tortious interference claims on the 'wrongful filing of a lawsuit.'" *Id.* Because RGIFTS claims ISR's efforts to enforce its trademarks by litigation and settlement was a "sham," Rule 9(b)'s heightened pleading standards should apply. Regardless, however, RGIFTS' counterclaims fail under either Rule 9(b) or Rule 12(b)(6).

## **CONCLUSION**

By insistently trying to inject these counterclaims into the case, RGIFTS asks the Court to endorse its belief that any accused trademark *infringer* can sue for tortious interference and unfair competition by simply claiming the asserted trademark is generic and saying the trademark owner's enforcement actions were a "sham." RGIFTS, like anyone, can challenge the validity of ISR's Registered Marks—as it has in Counts 1–5 of its counterclaims and in its now-stayed USPTO proceeding—but the outcome of such challenges should not be assumed.

As of this writing, ISR's Registered Marks have not been cancelled and remain as strong as they have been for the past 30+ years. Accordingly, ISR respectfully requests that this Court grant its Motion and dismiss and/or strike Counts 6 and 7 of RGIFTS' Second Amended Counterclaims with prejudice.


October 7, 2024                                      Respectfully submitted,

                                                     **INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD.**

                                                     */s/ Shaun Zhang*
                                                     Olivia Bedi
                                                     Kalia Coleman
                                                     Keyonn L. Pope
                                                     Shaun Zhang
                                                     Edgar Matias
                                                     RILEY SAFER HOLMES & CANCILA LLP
                                                     1 South Dearborn Street, Suite 2200
                                                     Chicago, IL 60603
                                                     Tel: 312-471-8700

obedi@rshc-law.com
kcoleman@rshc-law.com
kpope@rshc-law.com
szhang@rshc-law.com
ematias@rshc-law.com

*Counsel for Plaintiff/Counter-Defendant*
*International Star Registry of Illinois, Ltd.*

**CERTIFICATE OF SERVICE**

This is to certify that on this 7th day of October 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Konrad Val Sherinian
Depeng Bi
Jeffrey Stephen Dixon
The Law Offices of Konrad Sherinian, LLC
1755 Park Street
Suite 200
Chicago, IL 60563
Tel. (630) 318-2606
ksherinian@sherinianlaw.net
ebi@sherinianlaw.net
jdixon@sherinianlaw.net

*/s/ Shaun Zhang*
Shaun Zhang
RILEY SAFER HOLMES & CANCILA LLP
1 South Dearborn Street, Suite 2200
Chicago, IL 60603
Tel: 312-471-8700
szhang@rshc-law.com