IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 21-cv-06446 |
| RGIFTS LIMITED and MATEI SUPPLY CORP., | ) ) ) ) | Judge Jeffrey I. Cummings Magistrate Judge Heather K. McShain |
| Defendants. | ) | |

**INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD.'S
MOTION TO COMPEL RGIFTS LIMITED'S RESPONSES TO DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.2, Plaintiff International Star Registry of Illinois, Ltd. ("ISR") moves to compel Defendant RGifts Limited ("RGifts") to provide certain discovery. Namely, RGifts has failed to properly search for and produce requested communications and is also improperly withholding relevant communications with third parties. This Court should compel RGifts to produce this information, for the reasons stated below.

**INTRODUCTION**

Fact discovery closed on Friday, November 22, 2024. On that date, RGifts produced the last of its 4,702 pages of documents. But much of RGifts' production is self-serving and not responsive to ISR's document requests to RGifts. During his deposition on November 11, 2024, RGifts' sole shareholder and director Rhys King testified that RGifts maintains electronic documents in a Google Drive and in Dropbox. (Ex. A at 316:17–317:5.) Mr. King testified that RGifts has been in business since 2014. (*See id.* at 61:21–23.) Mr. King also testified that it operates in multiple countries, has global employees located in and outside of the U.K., and by Q4 of 2017, had made more than $6.5 million in sales. (*Id.* at 46:15–49:4, 235:5–17.)

1

Yet despite running a global business since 2014 with millions in sales, Mr. King testified that he only collected "tens, not hundreds" of emails for this case—a litigation that has spanned three years. (*See id.* at 320:6–11.) When asked how Mr. King searched for those emails, he responded that he "would have searched through the search box within Gmail." (*Id.* at 320:24–321:3.) When asked what search terms he used, RGifts' counsel advised Mr. King not to answer. (*Id.* at 321:4–13.)

Mr. King also testified that RGifts and its global employees regularly use Slack channels to communicate. (*Id.* at 322:8–21.) But again, while he testified that he searched "everything" and used search terms, he yet again refused to identify what search terms he used or confirm that he even searched for the asserted trademarks in the case on the improper advice of counsel. (*Id.* at 326:12–19.)

ISR's counsel repeatedly asked RGifts to produce (1) responsive email and Slack messages generally, and (2) communications with third parties, specifically. (Ex. B; Ex. C.) RGifts refused. (*E.g.*, Ex. D.) Counsel for ISR and counsel for RGifts participated on a meet and confer on November 20, 2024, which ended in an impasse. When none of the requested documents were included in RGifts' November 22 document production, ISR promptly filed this motion to compel.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Wier v. United Airlines, Inc.*, No. 19–cv–7000, 2021 WL 5049774, at *2 (N.D. Ill. Mar. 9, 2021) (quotations omitted). The Rules allow for liberal discovery to prepare for the trial and settlement of disputes. *Hubbell Indus. Controls, Inc. v. Electro Power Sys. of Utah, Inc.*, No. 12–cv–8609, 2013 WL 5676916, at *3 (N.D. Ill. Oct. 17, 2013). A party objecting to discovery

2

bears the burden to show "why a particular discovery request is improper." *Id.* This burden is not satisfied by a "reflexive invocation" of generic objections. *See id.*

Courts consider the following factors when defining the scope of discovery: (1) the importance of the issues at stake, (2) the amount in controversy, (3) the parties' relative access to information, (4) the parties' resources, (5) the importance of discovery in resolving the issues, and (6) whether the burden or expense of discovery outweighs its likely benefits. *Wier*, 2021 WL 5049774, at *2.

Further, under Rule 37, a court may order payment for "reasonable expenses incurred in making the motion, including attorney's fees" if a motion to compel is granted. *Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries, Inc.*, 259 F.R.D. 323, 326 (N.D. Ill. 2009).

### **ARGUMENT**!

**I.     RGifts has Failed to Conduct a Reasonable Search for Responsive Materials.**

ISR requests this Court to order a third-party vendor to search RGifts' electronic storage accounts, including Google Drives, Slack and Dropbox, for responsive materials using the following search terms: INTERNATIONAL STAR REGISTRY, STAR REGISTRY, and STARREGISTRY.COM. *See First Niagara Risk Mgmt., Inc. v. Folino*, 317 F.R.D. 23, 27–29 (E.D. Penn. 2016).

In this litigation, ISR has asserted claims relating to RGifts' infringing use of ISR's trademarks INTERNATIONAL STAR REGISTRY, STAR REGISTRY, AND STARREGISTRY.COM, some of which are evident on RGifts' websites. (Dkt. 1.) ISR has served multiple discovery requests to identify documents and communications regarding RGifts' infringing use of ISR's trademarks. Specifically, ISR requested "All documents and things relating to the first use of Defendants' Allegedly Infringing Marks and/or variations thereof in connection with Defendants' goods or services." (Ex. E at Request No. 1.) ISR also requested "All documents

3

which refer or relate to communications with any third parties pertaining to this lawsuit or any issues referring or relating to this lawsuit." (*Id.* at Request No. 3.) And ISR also requested "All documents referring or relating to business, sales, marketing, search engine optimization advertising plans and referring or relating to Defendants' Allegedly Infringing Marks including and/or to Defendants' goods and/or services using said mark(s)." (*Id.* at Request No. 19.)

RGifts does not dispute that these documents are relevant. (Ex. F at Responses to Requests Nos. 1, 3, and 19.) Indeed, ISR's requests go to the heart of this case; therefore, they are relevant and proportional to the needs of this case and RGifts must produce responsive documents. ISR's business has suffered due to RGifts' use of ISR's trademarks, and it should be able to learn the extent of RGifts' use of them—whether it is driving search engine optimization, or in directed social media posts, or metadata embedded within websites or searches, the discovery process is the only means in which ISR can find evidence to support its claims.

RGifts' sole shareholder and director, Mr. King, testified that he searched "everything," yet the documents produced do not reflect the business records that a multimillion-dollar competitor would have. Although RGifts has operated in the U.S. market since 2014, RGifts only collected "tens" of emails. (*See* Ex. A at 61:21–23, 320:6–11.) Even then, RGifts largely produced email advertisements from 2022. (*E.g.*, Ex. G; *see* Ex. I at Second Amended Answer to Interrogatory No. 11 (identifying three other communications).) Further, RGifts' search failed to uncover responsive documents that RGifts knew existed. For instance, during his deposition, Mr. King revealed there were Slack messages between RGifts and Matei Supply Corp. regarding the litigation, which RGifts has not yet produced. (*See* Ex. A at 166:14–167:9.) Also, as described in Sections II and III, *infra*, RGifts has not identified nor produced communications with third parties, such as vendors, contractors, and competitors.

4

Given RGifts' failure to conduct a reasonable search, ISR probed into RGifts' search efforts during Mr. King's deposition. (*E.g.*, Ex. A at 320:12–321:13.) Counsel objected to the questioning on the basis of privilege and Mr. King refused to share how he searched for responsive documents, including what search terms he used to search for responsive documents. (*Id.*) However, courts in this district have found that this line of questioning does not call for privileged information. *Sullivan v. F.E. Moran, Inc. Fire Prot., of N. Ill.*, No. 16–cv–5660, 2017 WL 11884317, at *3 (N.D. Ill. May 15, 2017) ("[T]he Court finds that the question for search terms [used to search an email or computer] did not warrant a privilege objection . . . .")

Since RGifts did not conduct a reasonable search and is refusing to disclose its search methodology, requiring a third-party vendor to search RGifts' emails and Slack messages is appropriate. *First Niagra* is instructive. In *First Niagara*, the plaintiff moved to compel defendant for a broad search of his electronic devices, including emails and text messages, because they disagreed on the scope of court-ordered discovery. *Id.* at 26. Prior to the motion to compel, the parties stipulated that an e-discovery vendor could conduct a forensic imaging of defendant's personal and business devices using a list of key words and search terms. *Id.* While the court acknowledged the plaintiff's list of search terms and date range was rather broad, it granted the motion to compel because the request was proportional to the needs of the case following an analysis of the factors set out in Rule 26(b)(1). *See id.* at 28.  Here, ISR's proposed search terms are narrower than those approved by the *First Niagara* court, focusing on materials discussing ISR's trademarks.

**II.     RGifts Must Identify and Produce Responsive Third-Party Documents and Communications.**

ISR has served discovery requests aimed to identify relevant communications between RGifts and third parties. Specifically, ISR requested "All documents which refer or relate to

5

communications with any third parties pertaining to this lawsuit or any issues referring or relating to this lawsuit." (Ex. E at Request No. 3.) Similarly, ISR served an interrogatory requesting RGifts to "identify each communication [RGifts] had with any third parties which refers, relates or mentions the Plaintiff, including but not limited to, the Plaintiff's Marks, Plaintiff's business, or Plaintiff's products." (Ex. H at Interrogatory No. 11.) RGifts has failed to identify and produce communications with third parties, including third party vendors or contractors (such as social media influencers) and competitors.

### A. RGifts Cannot Withhold Communications with Vendors and Contractors.

RGifts does not dispute that communications with third party vendors and contractors is relevant. (*See* Ex. F at Response to Request No. 3; Ex. I at Second Amended Answer to Interrogatory No. 11.) Nor could it. Communications with third party vendors or contractors is relevant to ISR's trademark infringement claim, including the scope of RGifts' infringing use and its marketing using the same. *See AutoZone, Inc. v. Strick*, 543 F.3d 923, 932 (7th Cir. 2008) (trademark infringement considers "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties" (quotations omitted)). Further, ISR needs this information to address RGifts' affirmative defenses, including its assertion that its use constitutes "classic fair use or descriptive fair use" (*See* Dkt. 60 at Page 27.). *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015) (a fair use defense requires showing, among other elements, that the defendant "did not use the mark as a trademark").

In response to ISR's discovery requests, RGifts only identified three communications, and otherwise claims that no other non-privileged communications exist. (*See* Ex. F at Response to Request No. 3; Ex. I at Second Amended Answer to Interrogatory No. 11.) Yet, during the deposition of Mr. Rhys King, Mr. King revealed that RGifts hired a freelancer to help run their TikTok account, including by making posts. (Ex. A at 283:21–284:10.) Mr. King also approved a

6

specific post that references International Star Registry. (*Id.* at 284:15–20.) However, RGifts has not identified or produced any communications with the freelancer, such as the directions she was provided to create the post. (*See id.* at 287:5–12.) (Q: "Do you recall collecting the communications related to [the freelancer] for purposes of this litigation?" A: "No.") RGifts has not provided any explanation why it has not produced these documents.

Therefore, RGifts should be compelled to identify and produce communications with third party vendors and contractors.

### B. RGifts Improperly Invokes the Work Product Doctrine to Withhold Communications with Competitors.

Likewise, RGifts does not dispute that communications with competitors is relevant. (*See* Ex. F at Response to Request No. 3; Ex. I at Second Amended Answer to Interrogatory No. 11; Ex. J §I; Ex. D §I.) Indeed, competitor communications are relevant to ISR's trademark infringement claim, including the strength of its trademarks. *AutoZone*, 543 F.3d at 933 (third party use of a trademark may be relevant to the likelihood of confusion analysis). Notably, third party use is the crux of RGifts' counterclaims (wrongly) asserting that ISR's trademarks are generic. (*E.g.*, Dkt. 190 ¶ 77 (alleging that ISR has not enforced its trademarks against generic use by as many as 15 third parties)).

Even so, RGifts has refused to identify or produce any communications with competitors, claiming "any such communications that actually occurred are entirely privileged" as work product. (*See* Ex. D §I.) Indeed, in its most recent letter, RGifts refused to even provide a privilege log because "there is nothing to log, as every part of the communication is privileged," (*id.*) contravening well-established principles and this Court's instructions regarding privilege logs. *See* Privilege Logs Standing Order ("In the event that a party withholds otherwise discoverable

7

information on the ground of privilege, the withholding party generally must provide a log of the documents withheld on the ground of privilege.")

RGifts' work product claim fails. Rule 26 requires a party withholding responsive information based on the work product doctrine to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim." It is insufficient to make a "blanket claim" of work product. *See Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 371, 373 (N.D. Ill. 2000). Yet, RGifts only offers a blanket claim of work product protection and refuses to provide *any* information allowing ISR to assess its work product claim. (*See* Ex. D §I.) Namely, RGifts claims that all aspects of these communications are protected, including "the date they occurred, the identity of the third parties, and, especially, what was discussed." (*Id.*) Yet, this is the exact type of information parties and courts rely on to assess work product claims. *See Coltec Indus.*, 197 F.R.D. at 373 (explaining a party claiming work product protection should provide details including the "date, author and all recipients of the document, subject matter, purpose, and an explanation as to why the document should be privileged and not produced in discovery"); *see also* Privilege Logs Standing Order.

Instead of being transparent, RGifts obfuscates its outreach efforts preventing ISR from assessing its work product claim. Namely, RGifts asks ISR to "assume [counsel] spoke with all of [the competitors]," but then immediately backtracks to say it would "be physically impossible to speak with all of ISR's competitors." (*See* Ex. J §I.) RGifts also refused to even disclose whether these communications were written. (*See id.*) RGifts does nothing more than make the blanket and boilerplate assertion that work product applies, which is insufficient as a matter of law. *See Glass v. Vill. of Maywood*, No. 22–cv–164, 2023 WL 6461364, at *3 (N.D. Ill. Oct. 4, 2023) (generically

8

asserting that documents were prepared in anticipation for litigation and were protected by the work product doctrine was insufficient to show it applies).

Furthermore, courts recognize that discovery requests like Request No. 3 and Interrogatory No. 11 seek "factual information [] routinely sought in discovery," and that this information "may not be withheld from production on the basis of work product." *See E.E.O.C. v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 346 (N.D. Ill. 2005); *Loendorf v. PeopleConnect, Inc.*, No. 21–cv–51, 2022 WL 2867174, at *6 (N.D. Ill. July 21, 2022) ("'Factual information may not be withheld under the work product doctrine, but must be produced through interrogatories, depositions, or other discovery.'").

In *Jewel*, the court rejected the defendants work product claim to a similar interrogatory because the "fact that [the defendant] (or its counsel) has talked to certain persons who are potential witnesses, without more, reveals little or nothing about which witnesses [the defendant] considers important." *Id.* at 347. The court also stressed that the interrogatories did not ask the defendant to distinguish between witnesses interviewed by counsel or other personnel. *Id.* Rather, it was only because the defendant "decided to object to the interrogatories that answering them now might make this distinction clear. If so, then that is a wound that [the defendant] has inflicted on itself." *Id.* Similarly, RGifts inflicted this wound on itself by disclosing that counsel reached out to competitors. (*See* Ex. J §I.)

Moreover, RGifts has not produced the factual information underlying its work product claim in response to other discovery, as required. *Loendorf*, 2022 WL 2867174, at *6. For example, RGifts has not amended its Rule 26 Disclosures to disclose the competitors that may have discoverable information and that it may use to supports its claim or defenses, including its genericness allegations.

9

Therefore, RGifts has failed to meet its burden showing the work product doctrine applies, and it must identify and produce communications with competitors.

## **CONCLUSION**

ISR has repeatedly asked RGifts to produce relevant documents and communications about ISR, ISR's trademarks, and RGifts' infringing use of ISR's marks, including with third parties. The discovery process has been difficult, to say the least, due to RGifts and its counsel's stall tactics and contentious behavior. ISR requests this Court to compel production by ordering a third-party to search RGifts' electronic storage accounts, including Google Drives and Dropbox, to collect email messages and Slack messages, using ISR's trademarks as the search terms. ISR also respectfully asks this Court to order Defendant RGifts to pay for the expenses incurred to file this motion.

Dated: November 25, 2024

Respectfully submitted,

/s/ Olivia Bedi
Olivia Bedi
Kalia Coleman
Keyonn L. Pope
Shaun Zhang
Edgar Matias
RILEY SAFER HOLMES & CANCILA LLP
1 South Dearborn Street, Suite 2200
Chicago, IL 60603
Tel: 312-471-8700
obedi@rshc-law.com
kcoleman@rshc-law.com
kpope@rshc-law.com
szhang@rshc-law.com
ematias@rshc-law.com

*Attorneys for Plaintiff International Star Registry of Illinois, Ltd.*

## **LOCAL RULE 37.2 CERTIFICATE**

      I, Olivia Luk Bedi, attest that the parties participated on a meet and confer via Zoom video conference on November 20, 2024, at 3:00 pm Central Time to discuss discovery deficiencies, including the ones detailed in the accompanying motion to compel. Shaun Zhang and I represented ISR on the call with Defendants' counsel Konrad Sherinian and Jeffrey Dixon. Mr. Sherinian agreed that we had come to an impasse on the issues in ISR's motion to compel.

Dated: November 25, 2024

                                                  */s/Olivia Bedi*
                                                  Olivia Bedi

**CERTIFICATE OF SERVICE**

This is to certify that on November 25, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Konrad Val Sherinian<br>
Depeng Bi<br>
Jeffrey Stephen Dixon<br>
The Law Offices of Konrad Sherinian, LLC<br>
1755 Park Street<br>
Suite 200<br>
Chicago, IL 60563<br>
Tel. (630) 318-2606<br>
ksherinian@sherinianlaw.net<br>
ebi@sherinianlaw.net<br>
jdixon@sherinianlaw.net

             */s/Olivia Bedi*
             Olivia Bedi