IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL STAR REGISTRY OF ILLINOIS, LTD., | ) ) ) | |
| Plaintiff, | ) ) | No. 21 CV 6446 |
| v. | ) ) | Judge Jeffrey I. Cummings |
| RGIFTS LIMITED and MATEI SUPPLY CORP., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff International Star Registry of Illinois, Ltd. ("ISR") brings this action against defendants RGIFTS Limited ("RGIFTS") and Matei Supply Corp. ("Matei") alleging trademark infringement and other related claims. RGIFTS asserts counterclaims, (Dckt. ##175, 190), seeking cancellation of ISR's trademarks (Counts 1–5), and asserting claims for tortious interference with business relations (Count 6), and common law unfair competition (Count 7). ISR now asks the Court to strike certain portions of RGIFTS' second amended counterclaims as outside the scope of the Court's prior Memorandum Opinion and Order allowing RGIFTS to amend and to dismiss Counts 6 and 7 for failure to state a claim under Rule 12(b)(6). (Dckt. #182). For the reasons set forth below, ISR's motion to dismiss, (Dckt #182), is denied.

I.  **LEGAL STANDARD**

The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).  Dismissal of an action under Rule 12(b)(6) is "warranted only if no relief could be granted under any set of facts that could be proved consistent with the allegations." *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007).

When resolving a motion under Rule 12(b)(6), "in addition to the allegations set forth in the complaint itself," the Court may consider, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).  Indeed, it is "well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (cleaned up); *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) (same, citing cases).

## II. BACKGROUND

### A. The Parties

RGIFTS is a company headquartered in the United Kingdom that operates a star registry through which a person can purchase the right to name a star in RGIFTS' star registry.  (Dckt. #175 ¶¶1–2).  RGIFTS entered the star-naming marketplace in 2014, after which it rapidly grew to become an industry leader.  (*Id*. ¶¶11–12).  Defendant Matei is a California company that

2

fulfills star registration orders for RGIFTS' customers located in the United States. (Dckt. #243 ¶¶4, 9).

ISR is an Illinois corporation that has been engaged in the business of providing star naming services to the public since 1979. (*Id*. ¶¶2, 11). In connection with its business, ISR owns a number of trademarks, including: "INTERNATIONAL STAR REGISTRY," "STAR REGISTRY," and "STARREGISTRY.COM," (the "ISR Marks"). (*Id*. ¶14).

### B. ISR's Claims Against RGIFTS

On December 2, 2021, ISR filed a five-count complaint, (Dckt. #1), against RGIFTS and Matei alleging that they infringed upon the ISR Marks by using those marks, as well as "confusingly similar" marks and names, to advertise and sell their competing star naming services. Specifically, ISR alleges that defendants promoted their own services using ISR's marks and used "confusingly similar" marks and names to deceive customers into believing that their products were associated with ISR. (Dckt. #243 ¶¶29–30).[1] Based on these allegations, ISR asserts claims against defendants for: (1) federal trademark infringement; (2) federal unfair competition; (3) deceptive trade practices under Illinois law; and (4) common law unfair competition.

### C. RGIFTS' Initial Counterclaims and the Court's Prior Opinion

In response to ISR's claims, RGIFTS asserted counterclaims, (Dckt. #98), against ISR for cancellation of ISR's trademarks as generic; tortious interference with business relationships; common law unfair competition; monopolization and attempted monopolization in violation of Section 2 the Sherman Act, 15 U.S.C. §2, and monopolization and attempted monopolization in violation of the Illinois Antitrust Act, 740 ILCS 10/3 *et seq*. ISR then moved to dismiss only

---

[1] ISR recently amended its complaint and the Court thus cites to ISR's first amended complaint.

3

RGIFTS' antitrust claims and claims for tortious interference and unfair competition. ISR did not move to dismiss RGIFTS' claims for cancellation of the Marks.

On July 31, 2024, this Court issued a Memorandum Opinion and Order ("Opinion") granting in part and denying in part ISR's motion to dismiss. (Dckt. #165). Specifically, and as discussed in more detail below, the Court held that RGIFTS: (1) failed to allege an antitrust injury to support its claims for monopolization and attempted monopolization under federal and state law; (2) stated a claim for tortious interference with business relations with respect to ISR's alleged interference with RGIFTS' *customers*; (3) failed to state a claim for tortious interference with respect to ISR's alleged interference with social media sites or "Company X"; and (4) failed to state a claim for common law unfair competition. The Court granted RGIFTS leave to file amended counterclaims to the extent it could do so consistent with the Court's Opinion and Rule 11.

### D. RGIFTS' Second Amended Counterclaims

RGIFTS filed its second amended counterclaims on August 21, 2024, (Dckt. #175). The allegations of the second amended counterclaims are as follows:

According to RGIFTS, almost since its founding, ISR has attempted to "stymie and interfere with RGIFTS' growth." (*Id*. ¶13). Specifically, RGIFTS alleges that in 2016, ISR attempted to "have a major internet advertising provider ('Company X') stop doing business with RGIFTS." (*Id*. ¶14). RGIFTS maintains that although ISR was "unsuccessful in preventing RGIFTS from doing business with Company X," in 2016, ISR later reached a written settlement agreement with Company X (the "Agreement") in 2021. (*Id*. ¶15; Dckt. #113). The Agreement identifies RGIFTS by its business name ("Star-Name-Registry") and as one of two independent third parties offering certain deals on Company X's platform. (Dckt. #175 ¶16).

4

The Agreement prohibits Company X from using or allowing third parties to use on its platform:

> any of the following words, marks, or phrases in connection with star naming services: (1) 'star registry,' (2) 'international star,' (3) 'star register,' (4) 'star name register,' (5) 'star name registry,' (6) 'star registrant,' (7) 'star registration,' and/or (8) 'star regis….' (meaning with those letters "regis" followed by any other letters). . . . The restriction on these terms shall apply regardless of the capitalization or punctuation of these terms and/or where used in conjunction with other unrestricted words and phrases. For example, [Company X] will not use or allow to be used on its platform the word/mark 'star-name-registry' in connection with star naming services even though the phrase is separated by dashes instead of spaces.
>
> ***
>
> If ISR identifies that a merchant on the [Company X] Platform is selling star naming services and is using ISR's trademarks and service marks International Star Registry or Star Registry or words, marks or phrases prohibited by this paragraph then [Company X] will cease doing business of star naming services with such entities.

(*Id*. ¶¶18–19). On or around the effective date of the Agreement (June 30, 2021), Company X ceased doing business with RGIFTS. (*Id*. ¶28).

RGIFTS maintains that the Agreement between ISR and Company X is improper because, *inter alia*: (1) it is an abusive attempt by ISR to "expand its (purported) rights in its actual marks, to prohibit not only the use of marks, but also that of common words or phrases that include 'star regis…' and/or "international star," in any way 'in connection with star naming services;'" (2) it grants ISR sole discretion to identify a merchant that is violation the agreement; and (3) does not provide terms under which Company X may resume doing business with any such merchant. (*Id*. ¶¶21–27).

RGIFTS further alleges that on numerous occasions, "ISR has made false disparaging statements about RGIFTS to RGIFTS' customers, including (1) that RGIFTS is a 'copycat' company, (2) that RGIFTS is one of several 'imposter' companies, and (3) that RGIFTS is a

5

'counterfeit firm,' while encouraging and providing links and instructions for customers to report RGIFTS as a 'scammer' to the Better Business Bureau, the Federal Trade Commission (FTC), and/or the Attorney General of Illinois or the customer's state." (*Id*. ¶29).

Finally, RGIFTS maintains that ISR has actual knowledge that the terms it is attempting to protect as trademarks are generic because: (1) the ordinary meaning of ISR's Marks is generic for designating and publishing names of stars in a registry; (2) each class of each ISR registration includes listed goods and/or services for which the wording "STAR REGISTRY" is or has become generic; (3) ISR's Marks are or have become generic as evidenced by widespread generic use; and (4) with one exception, ISR has failed to take action against generic uses of "Star" and "Regist-". (*Id*. ¶¶32–88).

According to RGIFTS, after ISR failed to intimidate RGIFTS into leaving the market for star registry and star naming services, ISR filed this action and, during discovery, RGIFTS uncovered ISR's alleged tortious conduct. (*Id*. ¶30). In its second amended counterclaims, RGIFTS asserts claims for cancellation of the ISR Marks (Counts 1–5), tortious interference with business relations with its customers and Company X (Count 6), and common law unfair competition (Count 7).[2]

## III. ANALYSIS

ISR now asks the Court to strike certain portions of RGIFTS' second amended counterclaims as outside the scope of the Court's prior Opinion allowing amendment and to dismiss the claims for tortuous interference with business relations and unfair competition for

---

[2] RGIFTS did not re-plead its monopolization or attempted monopolization claims under federal or state antitrust laws or any claim related to ISR's alleged interference with social media sites.

failure to state a claim under Rule 12(b)(6). For the reasons that follow, the Court denies ISR's request to strike and its motion to dismiss.

### A. The Court denies ISR's request to strike certain allegations as outside the scope of the Court's prior Opinion.

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "The decision to strike material is within the discretion of the court," *Tucker Firm, LLC v. Alise*, No. 11-CV-1089, 2012 WL 252790, at *2 (N.D.Ill. Jan. 25, 2012), and "the court will only grant a motion to strike if the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party," *In re Abbott Lab'ys, et al. Preterm Infant Nutrition Prods. Liab. Litig.*, No. 22 C 3737, 2023 WL 4564592, at *5 (N.D.Ill. July 17, 2023). Courts generally disfavor and infrequently grant motions to strike. *See, e.g., Meridian Sec. Ins. Co. v. Roberts*, No. 19-CV-00884-NJR, 2020 WL 1065465, at *1 (S.D.Ill. Mar. 5, 2020) ("As a general rule, motions to strike are disfavored and rarely granted because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic.").

Here, ISR first asks the Court to strike RGIFTS' allegations related to RGIFTS' claim for tortious interference with its customers, specifically that ISR made false disparaging statements to those customers, "including (1) that RGIFTS is a 'copycat' company, (2) that RGIFTS is one of several 'imposter' companies, and (3) that RGIFTS is a 'counterfeit firm,' while encouraging and providing links and instructions for customers to report RGIFTS as a 'scammer' to the Better Business Bureau, the Federal Trade Commission (FTC), and/or the Attorney General of Illinois

7

or the customer's state." (*Id.* ¶¶29, 105(a)).³ According to ISR, because the Court previously determined that RGIFTS sufficiently stated a claim for tortious interference based on ISR's alleged interference with *customers* (as compared to social media sites and Company X), the Court did not grant RGIFTS leave to amend that aspect of the claim and these additional allegations must be stricken. The Court disagrees. Indeed, not only do the amended allegations differ only slightly from RGIFTS' prior counterclaims, but the Court itself noted in its Opinion that RGIFTS' tortious interference claim related to customers was "perhaps inartfully pled" and otherwise granted RGIFTS leave to amend the claim for tortious interference.⁴ As a result, the Court finds nothing improper about RGIFTS' amended allegations related to its claims of tortious interference, even with its customers.

ISR further asks the Court to strike a few additional allegations it views as solely related to RGIFTS' claims for trademark cancellation, (Dckt. #175 ¶¶38, 74–76), because ISR never sought leave to dismiss those claims and, as such, the Court never granted RGIFTS leave to *amend* those claims. However, as RGIFTS maintains, the additional allegations, at a minimum, support RGIFTS' contention that ISR's contract with Company X is a sham, which relates to RGIFTS' tortious interference and unfair competition claims. Having granted RGIFTS leave to amend those claims, the Court will not strike these additional paragraphs. Of course, the veracity

---

³ In the corresponding paragraph of its prior counterclaim, RGIFTS alleged that ISR interfered with its customers by "telling customers of RGIFTS that RGIFTS was 1) buying advertising from Google and abusing ISR's registered trademarks, 2) a counterfeit company, and 3) one of several imposter companies." (Dckt. #98 ¶128(a)).

⁴ In this regard, the Court distinguishes this case from *Clark v. Olin Winchester, LLC*, No. 3:21-CV-1357-DWD, 2023 WL 7411112, at *1 (S.D.Ill. Nov. 9, 2023), relied on by ISR, where plaintiff attempted to add allegations of and prayers for relief for punitive damages in relation to counts that he was *not* granted leave to amend.

of RGIFTS' allegations will be determined at a later date; in other words, ISR's complaints of RGIFTS putting the cart before the horse is immaterial at this stage.

For all of these reasons, and within its discretion, the Court denies ISR's request to strike certain allegations as outside of the scope of the Court's prior Opinion.

### B. RGIFTS has stated a claim for tortious interference with business relations with respect to ISR's Agreement with Company X.

Next, ISR moves to dismiss RGIFTS' claim for tortious interference with respect to the Agreement between ISR and Company X.[5] In order to state a claim for tortious interference with business relations (or prospective economic advantage) under Illinois law, RGIFTS must allege: "(1) it had a reasonable expectancy of entering into a valid business relationship, (2) the defendant had knowledge of that expectancy, (3) the defendant intentionally and unjustifiably interfered with the relationship by inducing or causing a termination of the expectancy, and (4) the defendant's interference caused damages." *Pactiv, LLC v. Multisorb Techs., Inc.*, 63 F.Supp.3d 832, 841 (N.D.Ill. 2014); *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009); *see also James v. Intercontinental Hotels Grp. Res., Inc.*, No. 09-CV-781, 2010 WL 529444, at *3 (N.D.Ill. Feb. 10, 2010) ("In Illinois, the terms 'tortious interference with business relations' and 'tortious interference with prospective economic advantage' are interchangeable."). "The tort of intentional interference with prospective economic advantage requires some conduct 'directed toward a third party through which defendants purposely cause that third party not to enter into *or continue*' a relationship with the plaintiff." *Iron Range Cap.*

---

[5] To the extent that ISR also intended (but did not articulate that intent) to seek dismissal of Count 6 based on its alleged interference with RGIFTS' *customers*, that request is denied for the same reasons as set forth in the Court's prior Opinion. (*See* Dckt. #165 at 10–12).

9

*Partners, LLC v. Osprey Cap., LLC*, No. 14-CV-1339, 2014 WL 5073153, at *6 (N.D.Ill. Oct. 7, 2014) (cleaned up and emphasis added).[6]

Here, in contrast to its prior counterclaims, RGIFTS has now stated a plausible claim for tortious interference with respect to ISR's Agreement with Company X. Indeed, accepting the allegations of the counterclaims as true, RGIFTS has sufficiently alleged that: (1) it had a reasonable expectation to engage in continued business with Company X (based, at a minimum, on its prior business with Company X); (2) ISR was aware of that expectancy as evidenced by the Agreement itself, which referenced RGIFTS by name; (3) ISR intentionally and unjustifiably interfered with the relationship by inducing or causing a termination of the expectancy when it entered into the Agreement with Company X and thereby caused Company X to cease doing business with RGIFTS; and (4) RGIFTS suffered damages as a result. This is sufficient to state a plausible claim to withstand ISR's motion to dismiss. *Twombly*, 550 U.S. at 570.

Moreover, ISR's contention that it is protected from RGIFTS' claim of tortious interference under the *Noerr-Pennington* doctrine is premature. That doctrine—which has been extended to tortious interference claims—"is rooted in the First Amendment and allows a party to petition the government for official action favorable to its interests without fear of suit, even if the results of that action might harm the interests of competitors." *WMH Tool Grp., Inc. v.*

---

[6] Despite not maintaining as such in its first motion to dismiss, ISR now argues that RGIFTS' claims for tortious interference and unfair competition are subject to the heightened pleading standard for fraud under Rule 9(b). This belated argument raises a potential for a finding of waiver which, unfortunately, the parties did not address in their briefs. *See WMH Tool Grp., Inc. v. Woodstock Int'l, Inc.*, No. 07-cv-3885, 2009 WL 6825247, at *10 n.4 (N.D.Ill. Dec. 9, 2009) ("If the failure to plead with particularity under Rule 9(b) is not raised in the first responsive pleading or in an early motion, the issue will be deemed waived."). In any event, where, as here, RGIFTS' claims for tortious interference and unfair competition are not grounded in allegations of fraud, the heightened pleading standard does not apply. *See Pittsfield Dev., LLC v. Lynd*, No. 19-CV-01321, 2020 WL 6701104, at *4 (N.D.Ill. Nov. 13, 2020) (heightened pleading standard did not apply where claims of tortious interference were not "premised on fraudulent conduct").

*Woodstock Int'l, Inc.*, No. 07-CV-3885, 2009 WL 6825247, at *11 (N.D.Ill. Dec. 9, 2009). However, "the *Noerr-Pennington* doctrine is an affirmative defense and a motion to dismiss "cannot reach the merits of an affirmative defense unless all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Klein v. Altria Grp., Inc.*, 525 F.Supp.3d 638, 662 (E.D.Va. 2021); *see also Rackemann v. LISNR, Inc.*, No. 117CV00624TWPMJD, 2018 WL 4574342, at *6 (S.D.Ind. Sept. 24, 2018) ("[T]he *Noerr-Pennington* defense is typically only properly analyzed through a consideration of evidence outside of the pleadings and as such, [is usually] not appropriately considered in [a] Rule 12(b)(6) context."). Moreover, "the First Amendment offers no protection when petitioning activity is a mere sham to cover an attempt to violate federal law." *Klein*, 525 F.Supp.3d at 662 (cleaned up).

Where, as here, RGIFTS makes allegations "that raise the possibility of the application of the sham exception to the doctrine," the Court cannot resolve the application of the *Noerr-Pennington* doctrine on the face of the complaint. *Klein*, 525 F.Supp.3d at 662 (citing *Navient Sols., LLC v. Law Offices of Jeffrey Lohman*, No. 19-cv-461, 2020 WL 1867939, at *4 (E.D.Va. Apr. 14, 2020)) ("Courts have routinely declined to address the *Noerr-Pennington* doctrine at the motion to dismiss stage, particularly where the sham litigation exception may be involved.") (collecting cases).

For these reasons, ISR's motion to dismiss Count 6 is denied.

**C. RGIFTS has stated a claim for unfair competition.**

As this Court previously explained, in Illinois, "the common law tort of unfair competition encompasses a 'broad spectrum of law, making it difficult to determine exactly what elements are required in order to prove such a claim.'" *Philips N. Am. LLC v. Glob. Med. Imaging, LLC*, No. 21-CV-3615, 2022 WL 3106971, at *11 (N.D.Ill. Aug. 4, 2022) (cleaned up).

11

Indeed, courts have recognized that the elements of common law unfair competition are "elusive" and "escape definition." *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F.Supp.3d 1005, 1012 (N.D.Ill. 2014); *see also LG Electronics v. Whirlpool Corp.*, No. 08 C 242, 2010 WL 3521785, at *2 (N.D.Ill. Sept. 1, 2010) ("Stating a claim for unfair competition under Illinois common law is not a simple task"). Nonetheless, the theory of common law unfair competition has evolved to at least include: (1) unfair competition by interfering with third party relations; *see Zenith Elecs. Corp. v. Exzec, Inc.*, No. 93 C 5041, 1997 WL 798907, at *14 (N.D.Ill. Dec. 24, 1997); and (2) unfair competition based on conduct that "shocks judicial sensibilities" and "violates standards of commercial morality," *Fedders Corp. v. Elite Classics*, 268 F.Supp.2d 1051, 1063 (S.D.Ill. 2003), *quoting Wilson v. Electro Marine Sys., Inc.*, 915 F.2d 1110, 1118 (7th Cir. 1990).

      Here, ISR argues only that RGIFTS' claim for unfair competition must fail for the same reasons as the tortious interference claim because—as the parties and the Court generally agree—the two claims rise and fall together. (*See* Dckt. #165 at 13–14). However, because the Court has otherwise held that RGIFTS stated its claim for tortious interference, so too has it stated a claim for unfair competition based on the mirror allegations for "interfering with third party relations." *See Zenith Elecs. Corp.*, 1997 WL 798907, at *14 (noting that "the principal form of [unfair competition]—as it applies to circumstances arising from alleged interference with third party relations—apparently falls under the rubric of tortious interference with prospective economic advantage.").

      For these reasons, ISR's motion to dismiss Count 7 is denied.

## CONCLUSION

For the foregoing reasons, ISR's motion to strike and dismiss, (Dckt. #182), is denied.

ISR shall answer RGIFTS's second amended counterclaims by October 17, 2025.

**DATE: September 26, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**